jms

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 03-40142-JAR |
| | ) | |
| DAVID C. WITTIG and | ) | |
| DOUGLAS T. LAKE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER DENYING MOTION TO STAY

This matter comes before the Court on Defendant Douglas T. Lake's Motion to Stay (Doc.

460). Defendant David C. Wittig has filed a Motion to Join in the Motion to Stay (Doc. 464).

Defendants seek a stay of all proceedings, including the June 14, 2005 trial date, pending appellate

review of this Court's Order Granting Government's Motion to Reinstate Restraining Order (Doc.

452). For the reasons stated below, the motion is denied.

### Background

This criminal case and, in particular, the issue of advanced legal fees has a protracted history.

The Court will not recount the history of the legal fees issue here, as this issue has been considered by

the Court in its orders of June 30, 2004, August 13, 2004 and May 23, 2005 (Docs. 110, 154 and

452). Rather, the Court will recount only those facts necessary to understand the posture of

defendants' instant motion to stay all proceedings.

The first trial in this matter ended in a mistrial on December 20, 2004. Shortly before the

declaration of a mistrial, on December 18, 2004, the government filed a Motion to Reinstate

Restraining Order (Doc. 284) as to the legal fees to be advanced in the criminal case. The Court held a post-trial status conference on January 4, 2005, at which time the Court heard oral argument on the government's motion and took the motion under advisement.[1]

On February 18, 2005, while the government's motion was still pending, defendant Wittig moved, pursuant to 28 U.S.C. § 455(a) and District of Kansas local rules, for this Court's recusal (Doc. 311). Defendant Lake also filed a motion for recusal on February 18, 2005 (Doc. 313). The Court issued an order denying defendants' motions for recusal on April 4, 2005 (Doc. 345). On April 14, 2005, defendants filed motions to stay all proceedings, including the then-scheduled May 9, 2005 trial date (Doc. 406). Defendants noted that they had prepared petitions for a writ of mandamus, which they intended to file with the Tenth Circuit. The Court informed counsel via telephone that it would not consider defendants' motion to stay until the petitions were actually filed with the Tenth Circuit. Defendant Wittig then filed his Petition for Writ of Mandamus with the Tenth Circuit, seeking this Court's recusal from all future proceedings. Shortly thereafter, defendant Lake too sought removal of this Court from his case by moving for a writ of mandamus. On April 16, 2005, the Court granted defendants' motion to stay in part, staying only the May 9, 2005 trial date, but no deadlines associated with the trial date, in an attempt to hold to the May 9, 2005 date (Doc. 409). On May 3, 2005, the Tenth Circuit denied both petitions for a writ of mandamus.

The Tenth Circuit's order ended the chilling effect caused by the pending recusal matters raised

---

[1]At the January 4, 2005 hearing, counsel for defendants represented that Westar Energy (Westar) had taken the position that it would suspend advancement and/or payment of attorneys fees while the government's motion to reinstate was pending. Subsequently, Westar's position changed, and it remitted over eight million dollars in fees in total, fees that the government would otherwise have restrained had the Court issued its order at an earlier time.

by defendants.  Indeed, the Court declined to issue orders on several outstanding motions, including the

government's motion to reinstate restraining order, which is at issue here, while the original motions for

recusal and the later petitions for a writ of mandamus were pending.  Consequently, on May 17, 2005,

following the Tenth Circuit's denial of defendants' petitions, the Court held a limine conference.  At the

conference, the Court reset the trial to begin on June 14, 2005.  In addition, the Court heard argument

on all pending motions and noted that it intended to issue written orders on the motions.  On May 23,

2005, the Court issued orders on all pending motions (Docs. 451, 452 and 453), including the

government's motion to reinstate restraining order, which defendants have now appealed.  Defendants

again ask the Court to stay all proceedings, including the June 14, 2005 trial date, while the Tenth

Circuit reviews this Court's order.

### *Discussion*

Fed. R. App. P. 8(a)(1) provides that a motion for stay of proceedings pending appeal must

ordinarily first be sought in the district court.  Four factors apply to the Court's consideration of

defendants' motion to stay: (1) the likelihood of success on appeal; (2) the threat of irreparable harm if

the stay is not granted; (3) the absence of harm to the opposing party if the stay is granted; and (4) the

harm to the public interest.[2]

## A.  Likelihood of Success on Appeal

Defendants devote a considerable portion of their brief to the issue of likelihood of success on

appeal.  Highly summarized, defendants contend that because the Court's May 23, 2005 order granting

---

[2]10th Cir. R. 8.1.

the government's motion to reinstate restraining order was erroneous, their appeal is likely to succeed. Defendants rest this contention on the same arguments that this Court previously fully considered in rejecting defendants' previous motions to modify and vacate the restraining order and in granting the government's motion to reinstate. Thus, defendants are merely rehashing rejected bases to support their argument that they are likely to succeed on appeal. The Court is compelled, however, to clarify the current posture of these proceedings in the context of defendants' interlocutory appeal from its order reinstating the restraining order.        On April 5, 2004, the Court granted the government's *ex parte* application for a post-indictment, pre-conviction restraining order directed against payments to defendants by Westar. The restraining order enjoined Westar from making any payments, including, but not limited to, compensation and benefits directly or indirectly to or on behalf of defendants in this case (Doc. 54). Defendants moved to modify and/or vacate the restraining order (Docs. 55 and 56), and on June 30, the Court entered an order modifying the April 5, 2004 restraining order to remove restrictions on Westar's payments to defendants, instead enjoining defendants from transferring any such payments, including payments in the form of advanced legal fees (Doc. 110). Any payments by Westar were ordered to be placed by defendants in an escrow account. In denying defendants' motions to modify and vacate, the Court held that, in the context of an attack on a pre-trial restraining order issued pursuant to 21 U.S.C. § 853(e), the Tenth Circuit *Jones*[3] decision held that due process does not require the court to grant a pretrial hearing on a challenge to the validity of the indictment and underlying forfeitability of the restrained assets without a threshold showing that a defendant has no

---

[3]*United States v. Jones*, 160 F.3d 641 (10th Cir. 1998).

4

funds from which to retain counsel or support himself or his family. Defendants took the position that a *Jones* hearing was not necessary or appropriate, and appealed the Court's order (Docs. 116 and 117). Defendants also sought a stay of the trial pending the first interlocutory appeal (Docs. 118 and 119).

Subsequently, the government filed its First Superseding Indictment (Doc. 126), making numerous changes to Count 40, the forfeiture count, and Count 1, the conspiracy count. On July 27, 2004, the Court held a telephone status conference, at which time counsel for defendant Lake indicated that in light of the Superseding Indictment, he would be requesting a *Jones* hearing after all. After finding that Lake had made the threshold finding of need and that the Grand Jury erred, the Court granted his request for a hearing. Because the government offered no evidence at this hearing, the Court found it had not made a showing of probable cause to believe the restrained assets were traceable to or derived from the underlying offense, and modified the restraining order to exclude the advancement of legal fees by Westar to defendants in this criminal case.

Contrary to defendants' assertions, the Court did not base its ruling on whether the government had a *legal* basis for seeking forfeiture of the advanced legal fees in the criminal case; rather, the modification of the restraining order was made on the basis of the government's lack of *evidence* within the context and parameters of a *Jones* hearing. Moreover, the Court specifically declined to hold that the right to advancement of fees for the criminal case predates their employment with Westar, as such right clearly did not vest in defendants until their respective employment dates with the company. Indeed, at the conclusion of the evidence presented at trial, the Court denied defendants' motions to dismiss Count 40 of the Superseding Indictment, the forfeiture count, and upon defendants' election, held that the question of whether the attorney fees paid by Westar in this criminal proceeding were

5

subject to forfeiture was a question for the jury, should it convict on the underlying charges.  This included fees paid by Westar, in the form of a money judgment against defendants, as well as fees yet to be advanced.  Of course, the trial ultimately ended in mistrial, and this issue was not presented to the jury.

The government subsequently moved to reinstate the restraining order as to legal fees to be advanced in the criminal case, arguing that the evidence at trial demonstrated that the Grand Jury did not err in finding that the restrained assets are proceeds or derived from traceable proceeds of the charged offenses.  The standard for judging the government's showing at this stage of the proceedings is probable cause.  As the Court noted in its order reinstating the restraining order, this matter currently stands on substantially different ground than at the time of the *Jones* hearing, and the Court found that the evidence at trial was sufficient to establish probable cause with respect to both defendants (Doc. 452).

Thus, the issue in the instant appeal is whether the Court erred when it determined that the government established probable cause that the advancement of legal fees, as provided for in Westar's Articles of Incorporation, constitutes proceeds of the specified unlawful activities charged in the Superseding Indictment.  Defendants have not challenged the existence of this evidence in the record, but instead continue to refer back to their arguments that there is no legal basis for forfeiture of this asset.  In light of the Court's finding of probable cause on the detailed record presented at trial, defendants have not shown that there is a likelihood of success on appeal.  Accordingly, the Court

cannot find that this factor weighs in favor of granting a stay.[4]

## B.  Threat of Irreparable Harm if the Stay is Not Granted

Defendants argue that the they will suffer irreparable harm if the stay is not granted.  Defendant Lake states that "[a]bsent a stay, the Court's order will irrevocably deprive [him] of his right to the advancement of legal fees and thereby the right to retain counsel of his choice and prepare competently for his defense."

At the outset, the Court notes that defendants are not being denied the advancement of attorneys fees.  This Court has repeatedly held that defendants may receive advance payments from Westar, but that these payments must be placed in an escrow account.  Moreover, the Court specifically noted that its remedy was not designed to relieve Westar of its contractual obligations to provide advancement of attorneys fees.  This Court stated, in the very order defendants have appealed, "It is not the Court's intention that Westar use the restraining order as a means to avoid any contractual obligation to defendants."

In support of his argument that irreparable harm will follow unless this Court stays all proceedings, defendant Lake argues that the right to advancement of fees is distinguishable from the right to indemnification of fees.  Yet, the citation provided by defendants does not support this assertion, nor is the case analogous to the instant matter.  As the government notes, defendants provide no authority to support the argument that their contractual right to advancement of attorneys fees trumps the government's right to forfeit proceeds of criminal activity.  The Court agrees with the government

---

[4]Indeed, the Court notes that the Tenth Circuit may not even have jurisdiction over the appeal.  When defendants first appealed the restraining order, the Tenth Circuit ordered briefing on the jurisdictional issue and considered summary dismissal for lack of jurisdiction.  *See* Doc. 150.

that placing the assets in an escrow account is the proper procedural mechanism to best balance and protect each parties' rights and interests; it ensures that Westar's advancement of funds are placed into defendants' possession should the Tenth Circuit rule that this Court erred, and it also ensures that the funds will be available for forfeiture by the United States should the jury ultimately determine that the funds are proceeds of a specified lawful activity.[5]

In addition, defendant Lake argues that the Court's order causes irreparable harm by restraining his right to effective assistance of counsel under the Sixth Amendment.  According to defendant Lake, the government's restraint of his assets and the Court's order enforcing that restraint, "have crippled his defense," such that he "literally cannot afford to continue to prepare as needed for this complex trial."  As the government notes, however, defendants do not have a Sixth Amendment right to use forfeitable assets to employ counsel.[6]  The Supreme Court has held that when a district court enters a pretrial order freezing or restricting transfer of assets, the order does not violate the Sixth Amendment, even where the defendant desires to use those assets to employ an attorney.[7]

The Court must also address defendants' claim that their counsel cannot afford to continue in this case without unlimited advancement of attorneys fees.  The Court notes that, to date, Westar has paid $8,323,715 in attorneys fees for Wittig and Lake.  In light of the money paid to Wittig and Lake's counsel, the Court doubts defendants' claim that counsel cannot "afford to continue to prepare as

---

[5]Moreover, the Court notes that it was first defendant Wittig who requested that the funds be placed in escrow (Defendant Wittig's Motion to Vacate Ex Parte Restraining Order, Doc. 56, p.2, b).

[6]*United States v. Jones*, 160 F.3d at 648 (citing *United States v. Monsanto*, 491 U.S. 600, 615 (1989)).

[7]*Monsanto*, 491 U.S. at 615.

needed for this complex trial." The Court notes that defendants have been already been tried once thus lessening the amount of trial preparation necessary for the retrial. For instance, the jury instructions, which were thoroughly briefed and argued in the first trial, have been vetted, such that there is no need to "recreate the wheel." In addition, the Court has issued orders on all pretrial and limine motions, as well as key evidentiary rulings on Fed. R. Evid. 902(11) certifications and expert witnesses.

More importantly, though, the Criminal Justice Act (CJA) provides a method for the Court to ensure that defendants have continuity of counsel. Under 18 U.S.C. § 3006A, a trial court has jurisdiction to appoint a defendant's previously retained counsel.[8] An attorney appointed under the CJA has exactly the same duties, burdens and responsibilities as a retained criminal defense attorney.[9] The CJA was enacted to help protect the rights of indigent defendants by ensuring that they are provided adequate legal representation.[10] The CJA also provides for investigative and expert witness expenses,[11] and fees in excess of specified maximums to appointed counsel for indigent defendants if there has been extended or complex representation.[12]

The Court concludes that defendants are not likely to suffer *irreparable* harm if this case goes forward absent a stay. Defendants will be denied the advancement of attorneys fees, pending the Tenth Circuit's review of this Court's order. Defendants have, however, indicated that they will seek an

---

[8] *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990) ("Attorneys frequently are removed as retained counsel and subsequently appointed to represent defendants as the financial status of defendants change.").

[9] *Ferri v. Ackerman*, 444 U.S. 193, 200 n.17 (1977) (citation omitted).

[10] *Id.* at 200.

[11] *See* 18 U.S.C. § 3006A(e)(1).

[12] *See* 18 U.S.C. § 3006A(D)(3)).

expedited briefing schedule of their appeal.  Moreover, the issue before the Tenth Circuit is limited in scope.  It is thus likely that the Tenth Circuit will rule quickly on the attorneys fees issue.  In light of the fact that defense counsel have already been paid over eight million dollars, it is difficult to discern any irreparable harm from a small delay in the advancement of attorneys fees, should the Circuit rule that this Court erred.  In fact, if defendants are correct that this Court erred, then as soon as the Tenth Circuit rules, whether it be expeditiously or not, the attorneys fees will be unrestrained and freely available to defendants, thereby curing any alleged *irreparable* harm.  Consequently, the Court cannot conclude that this factor weighs strongly in favor of granting a stay.

## C.  Absence of Harm to the Government if the Stay is Granted

In addition to the threat of irreparable harm to defendants, the Court must also consider the harm to the government if the stay is granted.  Defendants argue that there is an absence of harm to the government if the stay is granted because it has already had one opportunity to secure a conviction and, given that prior failed opportunity, the government cannot argue that the stay delays defendants' "day of reckoning with the justice system."

On the other hand, the government, pointing to defendants' repeated practice of moving for stays or continuances on the eve of trial, argues that it has expended numerous resources as it reaches the final stages of trial preparation.  The government notes that it will be forced to expend these resources again if the trial is continued.  In addition, the government argues that numerous witnesses have arranged their schedules to be available for the June 14, 2005 trial date.  Finally, the government notes that it has already lost the assistance of its primary case agent on this matter due to a location reassignment.  The current case agent has also been reassigned and is set to leave in early fall.  Thus, a

10

further continuance of this case will prejudice the government by leaving it without an experienced and informed agent on the case.

The Court agrees with the government that it is likely to be harmed if this trial is again continued. This factor thus weighs in favor of denying defendants' motion to stay.

**D. Harm to Public Interest**

Lastly, the Court must consider the harm to the public interest should the stay issue. Defendants assert that a stay pending their interlocutory appeal poses no risk of harm to the public interest. Stressing that they have already been tried once, defendants note that the public's interest in seeking justice discharged in a prompt fashion has already been satisfied. In addition, defendants argue that the public interest would be well served by meaningful appellate scrutiny of the Court's order.

Contrarily, the government argues that granting yet another stay in this protracted case will deny the public its right to have justice rendered expeditiously. The public's right to a speedy trial, which is as important as defendants' right to a speedy trial will be undermined by a continued delay.

The Court agrees that the public interest is likely to be harmed by a stay of the trial date. As the Court noted when defendants last attempted to stay the trial:

> There is no doubt that the public interest will be harmed if the Court issues a stay of the May 9, 2005 trial date. At considerable expense, 200 individuals have already been summoned to appear as potential jurors in this case. To ensure an adequately large venire, the Court recently authorized summons of 150 additional individuals. Thus, the Court has expended funds to mail 350 summons, and the jury coordinator has invested considerable time in managing the potential jury pool to date. If the trial is stayed for a long enough period that the scheduled May 9, 2005 trial date no longer holds, these funds will be wasted, and the Court will be forced to re-summons 350 different individuals.

These considerations apply with equal force today. Thus, the Court concludes that this factor weighs in

favor of denying defendants' request to stay the trial.

In sum, the Court notes that only one of the four applicable factors weighs in favor of granting defendants' motion to stay the trial.  Moreover, that factor, the risk of irreparable harm to defendants if the stay is not granted, does not weigh heavily in favor of granting the stay.  To the extent that defendants' will be harmed by the Court's denial of the motion to stay, the Court finds that this harm is far outweighed by the harm to the government and the public interest should this case be again delayed.  Finally, the Court notes that the likelihood of success on appeal factor weighs heavily in favor of denying the motion for stay.  The Court accordingly denies defendants' motion to stay.  **The criminal trial set to begin on June 14, 2005 will go forth as scheduled.**  The Court intends to hold to this June 14, 2005 trial date, even if defendants seek a stay of the proceedings in the Tenth Circuit.  Only in the event this Court is advised by the Tenth Circuit that a stay has been granted, will the Court stay the proceedings.

**IT IS THEREFORE ORDERED BY THIS COURT** that Defendant Lake's Motion to Stay (Doc. 460) is DENIED.

**IT IS FURTHER ORDERED BY THIS COURT** that Defendant Wittig's Motion to Join Douglas Lake's Motion for Stay  (Doc. 464) is GRANTED.

IT IS SO ORDERED.

Dated this  7th   day of June 2005.

 S/ Julie A. Robinson
Julie A. Robinson
United States District Judge

12