lml

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No. 03-40142-JAR |
| ) | |
| ) | |
| DAVID C. WITTIG and ) | |
| DOUGLAS T. LAKE, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM ORDER AND OPINION

This matter is before the Court on the government's Motion to Reinstate Restraining Orders Following Return of the Mandate and Impose Conditions of Release (Doc. 805) and defendants' responses in opposition (Docs. 806 and 831).[1] The Court heard argument on May 30, 2007, and took the matter under advisement. After reviewing the parties' arguments and submissions, the Court is now prepared to rule. For the reasons stated below, the Court denies the motion with respect to advancement of legal fees and grants the government's motion with respect to the remaining directly forfeitable assets listed in the Superseding Indictment.[2]

**I.    Background**

---

[1]Although defendant Wittig takes the lead in opposing the government's motion, defendant Lake has joined in Wittig's response to the extent it applies to him. Forfeitability of advanced legal fees is an issue common to both defendants.

[2]In addition to restraint of the forfeitable assets listed in Count 40, the government requested that the Court reinstate the post-trial restraining order (Doc. 590), issued to restrain all assets of the Wittigs', either joint or several, including the $7 million settlement fund recently returned by the government to defendant and Beth Wittig. The government subsequently modified its position, instead asserting that the Court hold that the Settlement Agreement between the government and Beth Wittig remains in full force and effect and allow the government to retain the $7 million settlement fund pending the third trial. The Court will address issues surrounding the post-trial restraining order and the $7 million settlement fund in a separate order.

Issues surrounding the forfeiture of defendants' extensive assets have been a major focus of this case. In particular, the matter of advanced legal fees in this criminal proceeding has been the subject of numerous motions, briefings, hearings, orders and appeals in this case, and has been exhaustively analyzed and addressed in the Court's orders of June 30, 2004, August 13, 2004, May 23, 2005 and June 7, 2005.[3] The Court incorporates these orders herein and relies upon them by reference in ruling on the instant motion.

Highly summarized, on February 13, 2004, the government filed an *ex parte* application for post-indictment, pre-conviction restraining order directed against the sale of defendant Wittig's Ferrari and both defendants' stock and interest in split dollar life insurance policies, which the Court granted.[4] On April 5, 2004, the government filed a second *ex parte* application for restraining order directed against payments to defendants by their former employer, Westar Energy, Inc. ("Westar") pursuant to an arbitration order. The Court granted the request, and a restraining order was entered enjoining Westar from:

> making any payments, including, but not limited to, compensation and benefits, directly or indirectly to or on behalf of the defendants in this case, . . . and attempting or completing any action that would affect the availability, marketability or value of said property, including but not limited to selling, assigning or pledging.[5]

On June 30, 2004, this Court entered an order modifying the April 5, 2004 restraining order to remove restrictions on Westar's payments to defendants, instead enjoining defendants

---

[3](Docs. 110, 154, 452, 468.)

[4](Docs. 49, 50.)

[5](Doc. 54.)

from transferring any such payments, including payments in the form of advanced legal fees.[6] Any payments by Westar were ordered to be placed by defendants in an escrow account, and the Court cautioned Westar that its order was not intended to be used as a means to avoid any contractual obligation to advance defendants' legal fees.

Defendants filed an interlocutory appeal to the Tenth Circuit, which was ultimately dismissed without decision. On August 10, 2004, the Court held an evidentiary hearing after finding that defendant Lake had satisfied the requisite showing of need and grand jury error with respect to the advanced legal fees.[7] Because defendant Lake made the requisite preliminary showing, the government was required to establish probable cause to believe the restrained assets are in fact traceable to or derived from the underlying offense.[8] The government offered argument, but no evidence at this hearing, and the Court ultimately entered an order modifying the restraining order to exclude the advancement of legal fees by Westar to defendant Lake in this criminal case. Although defendant Wittig had not met the requisite showing of need, the Court extended its ruling to him as well. The remaining provisions of the restraining order remained in force and effect.

The case proceeded to trial on October 12, 2004. At the conclusion of the evidence, the Court denied defendants' motion to dismiss Count 40 of the Superseding Indictment, the forfeiture count, and ruled that the question of whether the attorney fees paid by Westar in this criminal proceeding were subject to forfeiture was a question for the jury, should it convict on

---

[6](Doc. 110.)

[7]*See United States v. Jones*, 160 F.3d 641 (10th Cir. 1998).

[8]*Id*. at 648.

3

the underlying charges.[9] On December 20, 2004, the Court declared a mistrial after the jury was unable to reach a verdict.

The government then moved to reinstate the restraining order as to legal fees to be advanced in the criminal case, arguing that the evidence at trial demonstrated that the restrained assets are proceeds or derived from traceable proceeds, of the charged offenses. On May 23, 2005, the Court reinstated the restraining order with respect to advanced legal fees, holding that an eight-week trial had transpired, with testimony and evidence with respect to the government's allegations that defendants' right to advancement of legal fees in the criminal proceedings is derived from the alleged scheme or conspiracy between the defendants in this case.[10]

On May 26, 2005, defendants filed a second interlocutory appeal of the restraining order, along with an emergency motion to stay the trial. In denying the motion for stay, the Court clarified that the June 30, 2004 order modifying the restraining order to exclude advancement of fees was not based on whether the government had a legal basis for seeking forfeiture, but rather on the basis of the government's lack of evidence within the context and parameters of a *Jones* proceeding,[11] noting that the Court had denied defendants' motion to dismiss Count 40 and permitted the forfeiture issue to go to the jury.[12] The Tenth Circuit also denied the motion for stay, and ordered an expedited briefing schedule. The legal fee issue was fully briefed, including an *amicus* from the Association of Corporate Counsel. The appeal was submitted to a merits

---

[9]Defendants opted to have the jury, rather than the Court, determine whether the property in question is subject to forfeiture pursuant to Fed. R. Crim. P. 32.2 (a)(4).

[10](Doc. 452.)

[11]*Jones*, 160 F.3d at 641.

[12](Doc. 468.)

4

panel, but was dismissed when the jury ultimately declined to forfeit the attorneys fees in September 2005.

The second trial commenced on June 14, 2005. Following guilty verdicts against both defendants, the government sought forfeiture of assets and property, as specifically delineated in a Special Verdict Form for each defendant. The verdict form required the jury to make specific findings as to the proposed forfeiture of defendants' respective interests in property and to specify the underlying count for the forfeiture. The jury found that defendants' respective interests in the following property was subject to forfeiture:

- the split dollar life insurance policy, imputed income and payout in the amount of $28,033,928.00 [Wittig].

- long term incentive in the amount of $0.

- bonuses in the amount of $5,370,000.00 [Wittig]

- Guardian restricted stock unit dividends in the amount of $294,560.00.

- $4,013,719.40 of the real estate known as the Landon Mansion, located at 521 Westchester Road, Topeka, Kansas 66604 (hereinafter "Landon Mansion") [Wittig]

- $700,000 in art and interior furnishings [Wittig]

- $17,460.00 of the 2001 Ferrari, 500 Maranello, VIN ZFFZS49A010122784 [Wittig]

- unpaid Westar Stock units for compensation, plus Westar Dividends

- unpaid Redeemed Guardian Series C Stock units

- unpaid Guardian Series D and E Stock units

- unpaid Guardian Cash Dividends (Series C and E)
- unpaid benefits claimed by defendants as a result of a Qualified Termination
- restricted share units outstanding (not vested) of Guardian Series D
- restricted share units outstanding (not vested) of Guardian Series E
- any arbitration award granted to Wittig and Lake, jointly or individually, arising out of their employment at Westar and any subsidiary or affiliate company.

The jury declined to forfeit defendants' respective interests in the following property:

- All base pay, in cash and stock;
- All dental/Health/Life/LTD/Vision Flex Credits;
- Car allowance;
- Legal/Financial/Tax Planning;
- Discretionary Accounts;
- Short term incentive;
- Stock for compensation distribution;
- Restricted Share Award Distributions;
- Restricted Share Award—Deferred Payout;
- Restricted Stock Unit Dividends—Westar;
- Restricted Share United Outstanding (not vested) of Westar Energy;
- Restricted Share United Outstanding (not vested) of Protection One; and
- All legal fees paid by Westar under the terms of the Articles of Incorporation or Bylaws of the Company.

The jury also specifically indicated that the sole basis for forfeiting defendant Wittig's interest in his Split Dollar Life Insurance and the Landon Mansion was the wire-fraud charges that have now been reversed with prejudice.

During subsequent forfeiture proceedings, the Court imposed a post-verdict restraining order to restrain forfeited assets and potential substitute assets.[13] This restraining order did not include the property the jury determined not to be subject to forfeiture. On July 31, 2006, after entry of a Final Order of Forfeiture that incorporated the terms of a Settlement Agreement with Beth Wittig, this Court rescinded all restraining orders.[14] Defendants then appealed their convictions to the Tenth Circuit.

According to defendants, Westar refused to advance *any* legal fees for the second trial. Shortly after the conclusion of the second trial, on October 5, 2005, Westar filed a civil suit against defendant Lake before this Court, Case No. 05-4116-JAR, and against defendant Wittig in Shawnee County District Court, Case No. 05-C-1267, seeking a declaratory judgment as to the legal fees and expenses reasonably incurred by defendants for their defense of several matters, including the criminal trials and the appeals therefrom. Lake brought a counterclaim asserting that Westar's refusal to honor its advancement obligation in full is a breach of contract right not subject to any reasonableness requirement. Westar filed a motion to dismiss Lake's counterclaim, which the Court denied. The case was stayed upon the parties' representation that the case had settled. Settlement fell apart, but the parties requested the stay to continue until the Court ruled on Lake's motion for summary judgment or the Tenth Circuit ruled on defendants' appeal from their convictions. Lake's motion for summary judgment takes the position that there

---

[13](Doc. 590.)

[14](Doc. 801.)

is no legal justification for Westar's failure to pay "even a single penny" of his requests for advancement of fees in the second trial and appeal, and requests summary judgment on liability on the advancement obligation.

On January 5, 2007, the Tenth Circuit reversed defendants' convictions.[15] In so doing, the Tenth Circuit held that the wire fraud and money laundering counts cannot be retried, but that the counts for conspiracy, circumvention of internal controls and forfeiture would be remanded for retrial. On February 27, 2007, the government filed the instant motion to reinstate restraining orders and sought additional conditions of release of defendant Wittig. The government requests that the restraining orders rescinded by this Court should be reinstated to restrain the directly forfeitable assets, including advancement of attorney fees and to prevent defendant Wittig and his family members and agents from further dissipation of assets. The Court deferred ruling on the motion, as the government had yet to announce its intention with respect to retrial of the remanded counts. On April 30, 2007, the government confirmed its intent to try the case for a third time, and trial is currently set for January 14, 2008.

**II. Analysis**

In *United States v. Jones*,[16] the Tenth Circuit held that a defendant is entitled to challenge a pretrial restraining order only if he makes two threshold showings: (1) that he has no funds other than the restrained property with which to hire counsel in the criminal case, and (2) that there is a good faith reason to believe that the grand jury erred in finding probable cause to believe that the restrained property would be subject to forfeiture if the defendant is convicted.[17]

---

[15]*United States v. Lake*, 472 F.3d 1247 (10th Cir. 2007).

[16]160 F.3d 641 (10th Cir. 1998).

[17]*Id.* at 648.

8

The first showing ensures that defendants will have the right to contest the restraining order in any case where the defendant's Sixth Amendment right to counsel is implicated, while the second requirement prevents the defendant from using the hearing merely as a way of getting discovery from the government in the criminal case when he has no real basis for challenging the restraining order.[18]

At the *Jones* hearing[19] in August 2004, the government argued that the alleged scheme to deprive Westar of its assets began the day defendant Wittig joined Westar in 1995 and morphed into a conspiracy the day defendant Lake joined Westar in 1998. The government argued that defendants could not vest in the right to advancement of attorneys fees until they "came on board with the proper intent," and the inferences to be drawn from the facts in the Indictment were that it was defendants' intent to loot Westar from the time of their employment. According to the government, this constitutes fraud *ab initio*, and because defendants Wittig and Lake fraudulently assumed their employment with Westar, they should forfeit every benefit obtained from the operation of the alleged scheme and conspiracy to loot Westar of its assets. At that time, the government chose not to present any evidence in support of its theory that defendant Lake's right to advancement of legal fees is derived from the scheme or conspiracy to commit the underlying charges, apparently to avoid revealing its strategy or evidence in advance of trial. Consequently, the Court found that the government had not satisfied its burden with respect to the advancement of legal fees, and lifted the restraining order. The Court declined to hold, however, that the right to advancement of legal fees predated defendants' employment with

---

[18]*Id.*

[19]The Court has referred to the post-restraint hearing as a "*Jones* hearing" throughout these proceedings. Other courts refer to this two-part test as the *Jones-Farmer* rule after the two leading cases in which it first appeared, *Jones*, 160 F.3d at 641, and *United States v. Farmer*, 274 F.3d 800, 804-05 (4th Cir. 2001) (following *Jones*).

Westar, as such right did not vest in defendants until their respective employment dates with the company.

At the time the Court reinstated the restraining order after the mistrial and prior to the second trial, the case stood on substantially different ground than at the time of the *Jones* hearing. An eight-week trial had transpired, with testimony and evidence with respect to the government's charge that defendants' right to advancement of legal fees in the criminal proceedings is derived from the alleged scheme or conspiracy between the defendants in this case. The government argued that defendants' pre-existing right to advancement of fees is analogous to other benefits they became entitled to upon employment; if defendants accepted employment with Westar with criminal intent, the benefit is potentially forfeitable. This evidence included defendant Lake's testimony that he went on the Board of Guardian in 1996 at the request of defendant Wittig as the representative of Westar, two years prior to his employment with the company. Further, upon joining Westar, defendant Lake oversaw the unregulated assets to be spun-off into an unregulated company. Such evidence supported the government's theory that defendant Lake fraudulently assumed his employment with Westar. The Court found this evidence sufficient to establish probable cause to believe the restrained assets constitute or are derived from proceeds traceable to the underlying offense.

With respect to defendant Wittig, the Court found that there was evidence at trial that some of the components of the alleged scheme began upon his employment, including his relocation and signing bonus provisions, which would have been negotiated as part of his employment. The Court found this evidence also supported the government's theory that defendant Wittig fraudulently assumed his employment with Westar. Although not as strong as

the evidence regarding defendant Lake, the Court found it sufficient to establish probable cause in the context of *Jones* and pre-trial restraint of forfeitable assets.

In reinstating the April 5, 2004, restraining order, as modified on June 30, 2004, the Court once again made clear its intent was to preserve the status quo and the assets for potential forfeiture, and that any payments of advanced legal fees to defendants in this criminal proceeding by Westar, were to be placed by defendants in an escrow account; defendants were enjoined from transferring any such payments. It was not the Court's intention that Westar use the restraining order as a means to avoid any contractual obligation to defendants. The Court continued to stress, however, that it did not have jurisdiction to compel Westar to pay any such legal fees; that matter was left to defendants, Westar and the arbitration panel.

Once again, the issue of pretrial restraint of defendants' right to advancement of legal fees is before the Court. And, once again, the case stands on substantially different grounds. The jury in the second trial rejected the government's theory and declined to forfeit defendants' interest in the advanced legal fees. All restraining orders have been lifted. And, most significantly, the Tenth Circuit reversed the wire fraud counts with prejudice.

When the Court previously analyzed the issue, it was in the context of whether defendants were entitled to a post-restraint, pre-trial hearing at which the government must establish probable cause that the assets named in the Superseding Indictment are traceable to the offense. In the previous trials, defendants were seeking relief from the *ex parte* order obtained by the government. In the instant motion, the government does not seek an *ex parte* restraining order, but rather, asks the Court to reinstate the previous orders that were rescinded after the second trial. Because there is no restraining order in place, defendants are not seeking post-restraint relief, and *Jones* is not directly implicated. Thus, the Court analyzes the issue anew, in

11

the context of whether, and to what extent, it should enter a pretrial order restraining defendants' assets, including advancement of legal fees.

21 U.S.C. § 853(e) permits post-indictment, pre-conviction "protective orders" as follows:

> Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) of this section for forfeiture under this section . . . upon the filing of an indictment or information charging a violation of this subchapter or subchapter II of this chapter for which criminal forfeiture may be ordered under this section and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section. . . . [20]

In a criminal case, forfeiture constitutes punishment for a crime and necessarily occurs post-conviction.[21] The distinction between forfeiture and pretrial restraint is "no technical play on words. . . . Pretrial restraint is a severe remedy independent of a right to damages or property following a finding of liability."[22] The purpose of § 853(e)(1)(A) is to preserve assets and assure the availability of property pending disposition of the criminal case.[23] Congress mandated that § 853 be "liberally construed to effectuate its remedial purposes."[24]

---

[20] 21 U.S.C. § 853(e)(1)(A).

[21] *See Libretti v. United States*, 516 U.S. 29, 38-39 (1995); Fed. R. Crim. P. 32.2(b)(3) (order of forfeiture "must be made a part of the sentence and included in the judgment").

[22] *United States v. Razmilovic*, 419 F.3d 134, 137 (2d Cir. 2005). The Supreme Court has dubbed pretrial restraint as a "'nuclear weapon' of the law." *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 332 (1999) (discussing pretrial restraint of debtor's assets in civil proceeding).

[23] *Jones*, 160 F.3d at 647 (citations omitted).

[24] 21 U.S.C. § 853(o).

Due process does not require a hearing before restraining assets under § 853(e).[25] The standard for entering a pretrial restraining order is probable cause,[26] which is defined as "a reasonable belief . . . supported by less than prima facie proof but more than mere suspicion."[27] The probable cause determination in forfeiture cases looks to all the circumstances and "must be judged . . . with a common sense view to the realities of normal life."[28] Although the government does not specify the grounds for its requested pre-trial restraint, the Court presumes that the government relies on Count 40 of the Superseding Indictment as well as the evidence produced at both trials. In Count 40, the government seeks forfeiture of an extensive list of property, including defendants' right to advanced payment of legal fees in this criminal proceeding by their former employer, Westar, as mandated by the company's Articles of Incorporation. The government seeks forfeiture of the legal fees under the theory that the subject property is involved in or derived from a "specified unlawful activity," namely a scheme and conspiracy to commit wire fraud and money laundering.[29] The Court previously ruled, as set forth in the forfeiture jury instructions and special verdict forms, that the proper standard under 18 U.S.C.

---

[25]*United States v. Musson*, 802 F.2d 384, 386-87 (10th Cir. 1986).

[26]*United States v. Monsanto*, 491 U.S. 600, 615 (1989); *United States v. Jones*, 160 F.3d 641, 648 (10th Cir. 1998).

[27]*United States v. Melrose East Subdivision*, 357 F.3d 493, 505 (5th Cir. 2004) (quotation omitted).

[28]*Id*. (quotation omitted).

[29]The Circumvention of Internal Controls counts 2 through 15 are not an underlying basis for forfeiture.

§ 981(a)(1)(C), is property "that constitutes or is derived from proceeds traceable to" an offense constituting "specified unlawful activity." The government is entitled to forfeiture of property if a nexus is established between the property being restrained and the criminal activity alleged.[30]

The legislative history of § 853(e) states that, "[f]or purposes of issuing a restraining order, the probable cause established in the indictment or information is to be determinative of any issue regarding the merits of the government's case on which the forfeiture is to be based."[31] As the court in *Jones* explained, "despite the fact that criminal forfeiture is ordinarily not a part of the substantive offense, but is instead a part of the sentence, . . . a grand jury is necessarily called upon in this context to believe the assets named in the indictment are traceable to the underlying offense."[32]

The Court certainly recognizes the weight to be given the grand jury's findings, having granted the government's previous requests for restraint of the assets included in the Superseding Indictment. And, the Court is in the unique position of having heard evidence regarding forfeitability of these assets at two trials. Nevertheless, it is clear to the Court that the landscape of these proceedings has changed, in light of the decision of the Tenth Circuit reversing with prejudice the wire fraud counts. This reversal impacts the government's ability to seek forfeiture of assets that constitute or are derived from proceeds traceable to "specified unlawful activity," namely a scheme and conspiracy to commit money laundering and wire fraud, as charged in Count 40. Quite simply, there is no longer a "scheme" that can serve as the underlying basis for the forfeiture count. Instead, the only remaining underlying basis for forfeiture is the conspiracy

---

[30]*See United States v. Bornfield*, 145 F.3d 1123, 1137-38 (10th Cir. 1998), *cert. denied*, 528 U.S. 1139 (2000).

[31]S. Rep. No. 98-225, at 203, 213 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3386, 3396.

[32]*United States v. Jones*, 160 F.3d 641, 645 (citations omitted).

charge; this underlying basis is limited to conspiracy to commit wire fraud and conspiracy to commit money laundering, as the circumvention of internal controls charges do not serve as an underlying basis for the forfeiture charge.[33] This is particularly critical to the government's theory with respect to the advancement of legal fees, as it was premised on defendants' fraudulent assumption of employment with Westar. While the scheme allegedly predated defendants' respective dates of employment, it did not morph into a conspiracy until defendant Lake actually joined the Company in 1998. Thus, the Court questions whether probable cause has been established as to certain assets in light of the reversal with prejudice of the wire fraud counts.

In addition, defendants have raised a legitimate issue with respect to whether the Special Verdicts declining forfeiture of legal fees and other property interests are conclusive and binding on the government. Defendants oppose the government's motion to reinstate restraining orders, arguing that the government is precluded from pursuing forfeiture on the legal fees, as well as other items the jury declined to forfeit, on collateral estoppel and double jeopardy theories. Defendants argue that at best, the government can seek the pretrial restraint only of property that is forfeitable property. To be potentially forfeitable property in the context of this case, defendants argue, it must be listed in the Superseding Indictment (and forfeitable by virtue of the remaining conspiracy charge) and not otherwise excluded from forfeiture by the prior jury verdict specifically declining forfeiture. The government discounts defendants' collateral estoppel and double jeopardy theories, and responds that all of the assets it sought to forfeit in the second trial are "back in play" by virtue of the Tenth Circuit's order remanding certain

---

[33]*See* Supplemental Forfeiture Jury Instruction (Doc. 532) and Special Verdict Forms, Count 40-Forfeiture (Docs. 543, 535.)

claims for retrial. The Court has reviewed defendants' submissions on the issue of collateral estoppel and double jeopardy with respect to criminal forfeiture proceedings and determines that these issues would be more appropriately raised in a motion to dismiss Count 40. In fact, defendant Wittig has indicated that he will challenge the forfeiture count and other charges, addressing their viability in light of the reversal with prejudice of the wire fraud and money laundering counts. The Court does not reach the merits of defendants' arguments concerning collateral estoppel and double jeopardy. Nonetheless, the Court considers the jury's verdict on Count 40, as one factor in its decision with respect to pretrial restraint of forfeitable assets.

After careful consideration of these issues, the Court turns to the government's broad request for pretrial restraint of defendants' assets. The Court denies the government's request with respect to advanced legal fees. The Court finds that under the current circumstances of these proceedings, the government has not established probable cause that the advanced legal fees are traceable to the remaining conspiracy charge. This is especially clear with defendant Wittig, who joined Westar almost three years before the alleged conspiracy began. The Superseding Indictment does not allege that either defendant joined Westar with fraudulent intent. Instead, the government presented evidence at trial that showed that some elements of the alleged scheme to defraud began before or upon defendants' respective employment dates. The Court declines to hold that evidence regarding the alleged scheme establishes probable cause that the advanced legal fees are traceable to the conspiracy count as charged.[34] Accordingly, the

---

[34]In addition to the probable cause shortfall, the Court questions whether restraint of advancement of legal fees would serve to preserve assets and assure the availability of property pending disposition of the criminal case. In both the June 30, 2004 order and the May 23, 2005 order of reinstatement, the Court directed the advanced legal fees to be placed in an escrow account pending trial. In both orders, the Court admonished Westar that it was not the Court's intent that Westar use the restraining order as a means to avoid its contractual obligation to defendants. Nevertheless, Westar specifically cited the restraining order in refusing to advance defendant Lake's legal fees in the second trial. *Westar v. Lake*, 05-4116-JAR (Doc. 61, Ex. P) (in letter from Westar to defendant Lake, counsel for Westar states, "As you know, by order dated May 23, 2005, Judge Robinson re-instituted the freeze order prohibiting the Company from advancing payments for legal fees to Mr. Wittig and Mr. Lake. . . . Given the status of

Court will not impose any pretrial restraint on this particular asset. In so ruling, the Court does not foreclose any issues defendants might raise in a motion to dismiss Count 40, including, but not limited to, the collateral estoppel and double jeopardy theories mentioned above.

The Court grants the government's request to other potentially forfeitable assets of defendants, as listed in the Superseding Indictment and set forth herein. The Court finds that the government has established probable cause that most, if not all, of these remaining assets are traceable to the remaining conspiracy charge. Although the probable cause issues may arguably extend to other forfeitable assets, particularly any benefits defendants became entitled to upon employment, defendants have never contested previous pretrial restraint of these assets on evidentiary or Sixth Amendment grounds. Moreover, most, if not all of these assets are in the possession or control of Westar, and not readily available to defendants. In so ruling, the Court does not foreclose any issues defendants might raise in a motion to dismiss Count 40.

**IT IS THEREFORE ORDERED BY THE COURT** that the government's motion to reinstate restraining orders (Doc. 805) is DENIED with respect to advanced legal fees, and GRANTED with respect to the remaining assets previously listed in this order. The Court declines to rule at this time on the remaining requests for relief, which will be addressed in a separate order.

IT IS SO ORDERED.

Dated this 27th day of June 2007.

                                                   S/ Julie A. Robinson

---

this issue, the Company sees no purpose in making any payments for advancement into a[n]. . . escrow account at this time. . . ."). Accordingly, had the jury in fact determined the advanced legal fees were subject to forfeiture, there were no preserved assets in escrow. The Court has no indication that Westar would proceed any differently during the third trial should the advanced legal fees be restrained. Unlike the first two trials, however, the Court has jurisdiction over the issue of Westar's obligation to advance legal fees, at least with respect to defendant Lake, by virtue of the civil case pending before it.

Julie A. Robinson
United States District Judge