# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| vs. ) | Case No. 03-40142-JAR |
| ) | |
| **DAVID C. WITTIG and** ) | |
| **DOUGLAS T. LAKE,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the government's Motion to Reinstate Restraining Orders Following Return of the Mandate and Impose Conditions of Release (Doc. 805) and defendants' responses in opposition (Docs. 806 and 831).[1] The Court heard argument on May 30, 2007, and took the matter under advisement. On June 27, 2007, the Court entered an order denying the motion with respect to advancement of legal fees and granting the government's motion with respect to the remaining directly forfeitable assets listed in the Superseding Indictment (Doc. 836). In addition to restraint of the forfeitable assets listed in Count 40, the government requested that the Court reinstate the post-trial restraining order (Doc. 590), issued to restrain all assets of the Wittigs', either joint or several, including the $7 million settlement fund recently returned by the government to defendant Wittig and his wife, Beth Wittig. The government subsequently modified its position, instead asserting that the Court hold that the

---

[1]Although defendant Wittig takes the lead in opposing the government's motion, defendant Lake has joined in Wittig's response to the extent it applies to him. The $7 million settlement fund is an issue limited to defendant Wittig.

Settlement Agreement between the government and Beth Wittig remains in full force and effect and allow the government to retain the $7 million settlement fund pending the third trial. The Court is now prepared to address the issues surrounding the post-trial restraining order and the $7 million settlement fund. For the reasons explained in detail below, the Court defers ruling on the issue until Beth Wittig states her position with respect to enforcement of the Settlement Agreement.

*Background*

On January 17, 2006, after extensive submissions by the parties and a hearing, this Court detained defendant Wittig for violating the conditions of release.[2] Highly summarized, defendant transferred assets to his wife, Beth Wittig, in violation of the terms of release, which the Court viewed as the intentional dissipation of assets.[3] Consequently, the government sought and obtained an expanded restraining order on the Wittigs' assets.[4] Specifically, the Court restrained property that might serve as substitute property to be forfeited after ancillary proceedings, including numerous joint and individual bank and investment accounts, stock, and partnership interests.[5] The restraining order also covered any personal property held by the Wittigs directly or indirectly in storage and any previously undisclosed accounts.[6]

On February 2, 2006, following the forfeiture verdict against defendant,[7] Beth Wittig

---

[2](Doc. 589.)

[3]*Id*.

[4](Doc. 590.)

[5]*Id*. at 2.

[6]*Id*.

[7](Doc. 534.)

2

filed an Ancillary Petition asserting an interest in various forfeited properties.[8] The government subsequently deposed Beth Wittig, at which time she testified, *inter alia*, that she had reached a verbal agreement with defendant some time in July 2004 to pay his past and future legal fees, and that she should "get something in return" for this agreement.

In March 2006, Beth Wittig and the government negotiated a settlement that compromised their respective interests in the subject property.[9] The Corrected Final Order of Forfeiture as to defendant incorporated the terms of the Settlement Agreement.[10] The Corrected Final Order of Forfeiture stated, in part, that $7,017,460.00 is forfeited to the United States "pursuant to and in accordance with the Settlement Agreement between the United States and Beth G. Wittig, which agreement resolves all claims and rights to the Substitute Assets identified in the Court's Order Modifying Restraining Orders and Preliminary Orders of Forfeiture."[11] Per the Settlement Agreement, the government released its interest in certain property and Beth Wittig agreed to liquidate certain property and fund a substitute asset settlement fund in the approximate amount of $7 million.[12] Beth Wittig also waived any right or interest in certain property, including Westar stock and employment benefits and all but $350,000 of the couple's home, referred to throughout these proceedings as the Landon Mansion.

On July 28, 2006, the government and counsel for Beth Wittig submitted an Agreed Motion for Rescission of Restraining Orders that stated she had fully performed under the

---

[8](Docs. 603, 604.)

[9](Doc. 806 Ex. 4.)

[10](Doc. 683.)

[11]*Id*.

[12]*Id*.

3

Settlement Agreement and paid her obligation in full.[13]  Per the agreement, $7,017,460.00 had been deposited with the United States Marshal's Service.  The Court rescinded all restraining orders and acknowledged Beth Wittig's performance under the compromise reached with the government.[14]

On January 5, 2007, the Tenth Circuit reversed defendants' convictions.[15]  In so doing, the Tenth Circuit held that the wire fraud and money laundering counts cannot be retried, but that the counts for conspiracy, circumvention of internal controls and forfeiture would be remanded for retrial.

On February 21, 2007, counsel for defendant advised the government of his position that as a consequence of the Tenth Circuit reversal of all counts, the government could no longer lawfully hold the $7 million.  Counsel stated that he was writing as counsel for David Wittig, (Beth Wittig had separate counsel in the ancillary proceedings), and requested that the money being held be returned immediately.  After several letters and emails back and forth, the parties apparently agreed that the funds would be returned by transferring them to defense counsel's law firm; no subsequent transfer of the principal funds would occur without complying with defendant's conditions of release, which require Court approval for transactions over $25,000; and the government might seek to satisfy the $1 million fine from the bank fraud case.[16]  According to defendant Wittig, it was consistently represented throughout exchanges with the

---

[13](Doc. 800.)

[14](Doc. 801.)

[15]*United States v. Lake*, 472 F.3d 1247 (10th Cir. 2007).

[16] *United States v. Wittig*, 02-40140-JAR.

4

government that Beth Wittig had disclaimed any interest in the substitute asset funds. The government then issued a check payable to David Wittig, Beth Wittig and defense counsel. Defendant filed a "Notice of Improper Return of Funds," taking issue with the return to Beth Wittig.[17] The government's position at that time was that Beth Wittig's Settlement Agreement with the government was void because her consideration had been returned to her.

On February 27, 2007, the government filed the instant motion to reinstate restraining orders. After consulting with the Department of Justice, the government reversed its position as to the $7 million, and now asserts that the Court should (1) restrain the directly forfeitable assets, as it did previously, to prevent the further dissipation of those assets and (2) hold that the Settlement Agreement between the government and Beth Wittig remains in full force and effect and allow the government to retain the $7 million pending retrial.

At the May 30 hearing, counsel for defendant Wittig indicated that he would return the check to the government, and the Court directed the funds be placed in an interest-bearing account with the United States Marshal's Service, pending disposition of the government's instant motion.

*Discussion*

Defendant contends that the government's request, as applied to substitute property, constitutes an unlawful restraint of substitute assets. The government counters that it is not seeking pretrial restraint "*per se*," but rather an order confirming that it is entitled to the settlement funds as the benefit of its bargain with Beth Wittig. The government asserts that a forfeiture settlement is not necessarily affected by a subsequent reversal and/or vacation of the

---

[17](Doc. 815.)

underlying criminal conviction, if the settling party voluntarily enters into the settlement agreement with the government, and the agreement is not conditioned on any outcome of any appeal of the underlying criminal case. The government further asserts that a non-defendant third party seeking relief from a settlement of an ancillary forfeiture petition in a criminal case must do so through Fed. R. Civ. P. 60, which Beth Wittig has not done. Finally, the government contends that defendant Wittig has no standing to the $7 million settlement fund, and that it relied to its detriment on the Wittigs' representations that all of their jointly held assets had been transferred to Beth Wittig, in exchange for her agreement to pay defendant's legal fees. According to the government, defendant's interest in assets subject to forfeiture are all "back in play, as if no trial had been held."

Defendant Wittig asserts that the government ignores the actual terms of the Settlement Agreement. Defendant notes that the specialized verdict of forfeiture was incorporated into the Preliminary Order of Forfeiture, and that all Wittig property constituted substitute assets that were available to satisfy that Order of Forfeiture. Defendant could only contest the Order of Forfeiture on appeal. Subsequently, there were ancillary proceedings in which third parties could assert their interests in forfeited property, which Beth Wittig did. The government and Beth Wittig negotiated a settlement "to settle and compromise the Unites States of America's claims to and interest in certain property and Petitioner's claim to and interest in property identified herein, . . ." The government released its interest in certain Wittig property, e.g., the Ferrari. Beth Wittig abandoned and released her interest in specified assets and property claims, agreed to a limited interest in the Landon Mansion ($350,000 after sale), and agreed to fund an account by liquidating Wittig assets. Defendant Wittig takes issue with the government's

6

statement that Beth Wittig agreed to liquidate "her" assets. The Settlement Agreement states that Beth Wittig shall

> liquidate assets and/or cause the liquidation or transfer of assets for funding a **$7,017,460.00 compromise payment to the United States Marshal's Service to be treated as the forfeited substitute asset funds of David C. Wittig**. . . **The compromise payment of $7,017,460.00 will be considered the forfeited substitute assets of David C. Wittig**, and Petitioner agrees to the forfeiture to the United States of the [funds] and waives any right, title or interest in such funds. (emphasis added).

Thus, defendant Wittig argues, the government ignores its own settlement terms and argues for enforcement while requesting relief at odds with the express language of the agreement.

Defendant Wittig urges that the legal characterization of the $7 million is "the forfeited substitute assets of David C. Wittig," as set forth in the Settlement Agreement and the Corrected Final Order of Forfeiture. Following the Tenth Circuit reversal, the government now holds funds that are the substitute assets of defendant Wittig. Accordingly, the issue is whether the government can enforce a pretrial restraint on these assets, which defendant contends it cannot.

Both parties adamantly argue that the settlement agreement is enforceable, with wildly divergent results. However, defendant Wittig was not a party to the settlement agreement and the Court questions his standing to urge its enforcement. This begs the question, in examining the history and context of the settlement agreement, whether the Court may decide the parties' intent without the input of one of the parties—Beth Wittig? Does Beth Wittig, who was represented by separate counsel in the ancillary proceedings and resulting settlement, intend to enforce the Settlement Agreement? Does Beth Wittig, outside of the context of the forfeiture proceedings, intend to continue to waive any claim she might have to not only the $7 million settlement fund, but numerous other forfeited assets, including the Landon Mansion? Without

7

input from Beth Wittig, the Court declines to rule on the issues surrounding enforcement of the Settlement Agreement between her and the government. Accordingly, until such time as Beth Wittig formally states her position, the Court will defer ruling on the government's motion, and the settlement funds will remain in an interest-bearing account with the United States Marshal's Service.

**IT IS THEREFORE ORDERED BY THE COURT** that Beth Wittig shall file a response to the government's motion to reinstate restraining orders on or before **October 10, 2007.**

**IT IS SO ORDERED.**

Dated this 10th day of September 2007.

                                       S/ Julie A. Robinson
                                       Julie A. Robinson
                                       United States District Judge