lml

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 03-40142-JAR |
| DAVID C. WITTIG and DOUGLAS T. LAKE, | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the government's Motion to Reinstate Restraining Orders Following Return of the Mandate and Impose Conditions of Release (Doc. 805) and defendants' responses in opposition (Docs. 806, 831).[1] The Court heard argument on May 30, 2007, and took the matter under advisement. On June 27, 2007, the Court entered an order denying the motion with respect to advancement of legal fees and granting the government's motion with respect to the remaining directly forfeitable assets listed in the Superseding Indictment (Doc. 836). In addition to restraint of the forfeitable assets listed in Count 40, the government requested that the Court reinstate the post-trial restraining order (Doc. 590), issued to restrain all assets of the Wittigs, either joint or several, including the $7,017,460.00 settlement fund ("$7 million settlement fund") recently returned by the government to defendant Wittig and his wife, Beth Wittig. The government subsequently modified its position, instead asserting that

---

[1]Although defendant Wittig takes the lead in opposing the government's motion, defendant Lake has joined in Wittig's response to the extent it applies to him. The $7 million settlement fund is an issue limited to defendant Wittig.

the Court hold that the Settlement Agreement between the government and Beth Wittig remains in full force and effect and allow the government to retain the $7 million settlement fund pending the third trial.

In an Order issued September 10, 2007, the Court deferred ruling on the issue until Beth Wittig stated her position with respect to enforcement of the Settlement Agreement. Specifically, the Court requested Beth Wittig to address whether she considered the Settlement Agreement to be a binding contract between herself and the government notwithstanding the subsequent reversal of the convictions against her husband, defendant David Wittig. Beth Wittig filed her response on October 10, 2007 (Doc. 854); defendant Wittig also filed a response (Doc. 851). The government has not made any additional submissions on the issue. The Court has reviewed the parties' submissions and is prepared to rule. For the reasons set forth in detail below, the Court denies the government's motion and orders return of the $7 million settlement fund to defendant Wittig.

*Procedural Background and Facts*

The procedural background and facts surrounding the $7 million settlement fund were set forth in the Court's previous Order of September 10, 2007. The Court incorporates that Order herein and relies upon it by reference in ruling on the instant motion.

On January 3, 2006, the Court issued a Preliminary Order of Forfeiture as to defendant Wittig identifying property subject to forfeiture as a result of the jury verdicts of forfeiture issued against defendant after the second trial of this case.[2]

On January 17, 2006, after extensive submissions by the parties and a hearing, this Court

---

[2](Doc. 577.)

2

detained defendant Wittig for violating the conditions of release.[3] Highly summarized, defendant transferred assets to Beth Wittig in violation of the terms of release, which the Court viewed as the intentional dissipation of assets.[4] Consequently, the government sought and obtained an expanded post-conviction restraining order on the Wittigs' assets.[5] Specifically, the Court restrained property that might serve as substitute property to be forfeited after ancillary proceedings, including numerous joint and individual bank and investment accounts, stock, and partnership interests.[6] The restraining order also covered any personal property held by the Wittigs directly or indirectly in storage and any previously undisclosed accounts.[7]

On February 7, 2006, the Court issued an Order Modifying Restraining Orders and the Preliminary Orders of Forfeiture.[8] The Modified Preliminary Order of Forfeiture identified as additional forfeitable property a list of substitute assets that included all Wittig property of both defendant and Beth Wittig.[9]

Following the Preliminary Order of Forfeiture, Beth Wittig filed an Ancillary Petition asserting an interest in various forfeited properties, including the couple's home, referred to throughout these proceedings as the Landon Mansion, and the list of specific substitute assets.[10]

---

[3](Doc. 589.)

[4]*Id*.

[5](Doc. 590.)

[6]*Id*. at 2.

[7]*Id*.

[8](Doc. 610.)

[9]*Id*. at 2-3.

[10](Docs. 603, 604.)

3

The government subsequently deposed Beth Wittig, at which time she testified, *inter alia*, that she had reached a verbal agreement with defendant Wittig some time in July 2004 to pay his past and future legal fees, and that she should "get something in return" for this agreement.

In March 2006, Beth Wittig and the government negotiated a settlement that compromised their respective competing interests in the subject property.[11] Per the Settlement Agreement, the government released its interest in certain property and Beth Wittig agreed to liquidate certain property and fund a substitute asset settlement fund in the approximate amount of $7 million.[12] Beth Wittig also waived any right or interest in certain property, including Westar stock and employment benefits and all but $350,000 of the Landon Mansion.

The Settlement Agreement described the liquidation as follows:

> 4. <u>Resolution of Parties' Interest in Substitute Assets</u>. The Parties, in consideration of the settlement and compromise described herein, hereby agree to the following with regard to settling and resolving their competing interests **in all substitute assets and property** identified in the [Court's forfeiture orders].
>
> A. <u>Modification of Restraining Orders</u>.
> The parties agree to mutually request from the Court that the restraining orders, as modified by the Court's Order . . . be amended to permit Petitioner Beth G. Wittig to engage in the following financial transactions:
>
> (1). Liquidate assets and/or cause the liquidation or transfer of assets for funding a **$7,017,460.00 compromise payment to the United States Marshal's Service to be treated as the forfeited substitute asset funds of David C. Wittig** . . .
>
> . . . .
>
> B.(2) Petitioner Beth G. Wittig shall make

---

[11](Doc. 806, Ex. 4.)

[12]*Id.*

4

> payments/transfers into the fund by way of wire transfer pursuant to instructions provided by the government. . . . **The compromise payment of $7,017,460.00 will be considered the forfeited substitute assets of David C. Wittig**, and Petitioner agrees to the forfeiture to the United States of the $7,017,460.00 and waives any further right, title or interest in said funds. (Emphasis added).

The Settlement Agreement stated that it was intended to be a compromise between Beth Wittig and the government only, and expressly indicated that it did not impair defendant Wittig's appellate rights. In consideration of the promises and obligations of the parties, Beth Wittig and the government mutually waived and released all claims, causes of action, or demands relating to these proceedings.

The Corrected Final Order of Forfeiture as to defendant Wittig incorporated the terms of the Settlement Agreement.[13] The Corrected Final Order of Forfeiture stated, in part, that

> [D]ue to the unavailability of the Split-Dollar Payout and Imputed Income portion of Item 1, Item 3 and Item 4 for one of more of the reasons specified in 21 U.S.C. § 853(p), $7,017,460.00 is forfeited to the United States pursuant to and in accordance with the Settlement Agreement between the United States and Beth G. Wittig, which agreement resolves all claims and rights to the Substitute Assets identified in the Court's Order Modifying Restraining Orders and Preliminary Orders of Forfeiture.[14]

On July 28, 2006, the government and counsel for Beth Wittig submitted an Agreed Motion for Rescission of Restraining Orders that stated she had fully performed under the Settlement Agreement and paid her compromise payment obligation in full.[15] Per the agreement, $7,017,460.00 had been deposited with the United States Marshal's Service. The Court

---

[13](Doc. 683.)

[14]*Id*.

[15](Doc. 800.)

5

rescinded all restraining orders and acknowledged Beth Wittig's performance under the compromise reached with the government.[16]

On January 5, 2007, the Tenth Circuit reversed defendants' convictions.[17] In so doing, the Tenth Circuit held that the wire fraud and money laundering counts cannot be retried, but that the counts for conspiracy, circumvention of internal controls and forfeiture would be remanded for retrial. On February 21, 2007, counsel for defendant advised the government of his position that as a consequence of the Tenth Circuit reversal of all counts, the government could no longer lawfully hold the $7 million. Counsel stated that he was writing as counsel for David Wittig, (Beth Wittig had separate counsel in the ancillary proceedings), and requested that the money being held be returned immediately. The government then issued a check payable to David Wittig, Beth Wittig and defense counsel. Defendant filed a "Notice of Improper Return of Funds," taking issue with the return to Beth Wittig.[18] The government's position at that time was that Beth Wittig's Settlement Agreement with the government was void because her consideration had been returned to her.

On February 27, 2007, the government filed the instant motion to reinstate restraining orders. After consulting with the Department of Justice, the government reversed its position as to the $7 million settlement fund, and now asserts that the Court should hold that the Settlement Agreement between the government and Beth Wittig remains in full force and effect and allow the government to retain the $7 million pending retrial.

---

[16](Doc. 801.)

[17]*United States v. Lake*, 472 F.3d 1247 (10th Cir. 2007).

[18](Doc. 815.)

At the May 30 hearing, counsel for defendant Wittig indicated that he would return the check to the government. The Court entered a stop-payment order and directed the funds be placed in an interest-bearing account with the United States Marshal's Service, pending disposition of the government's instant motion.[19]

*Discussion*

The issue before the Court is whether the government can obtain an order for pretrial restraint of the $7 million settlement fund. Defendant contends that the government's request constitutes an unlawful restraint of substitute assets. The government counters that it is not seeking pretrial restraint "*per se*," but rather an order confirming that it is entitled to the settlement funds as the benefit of its bargain with Beth Wittig. The government asserts that a forfeiture settlement is not necessarily affected by a subsequent reversal and/or vacatur of the underlying criminal conviction, if the settling party voluntarily enters into the settlement agreement with the government, and the agreement is not conditioned on any outcome of any appeal of the underlying criminal case. The government further asserts that a non-defendant third party seeking relief from a settlement of an ancillary forfeiture petition in a criminal case must do so through Fed. R. Civ. P. 60, which Beth Wittig has not done. Finally, the government contends that defendant Wittig has no standing to the $7 million settlement fund, and that it relied to its detriment on the Wittigs' representations that all of their jointly held assets had been transferred to Beth Wittig, in exchange for her agreement to pay defendant's legal fees. According to the government, defendant's interest in assets subject to forfeiture are all "back in play, as if no trial had been held."

---

[19](Doc. 828.)

In her response, Beth Wittig confirmed that she does in fact "consider the Settlement Agreement to be valid and binding as a completed contract between the government and herself." She further asserts that the Settlement Agreement is supported by consideration from both parties as it is a compromise of competing claims by the government and herself, and, as acknowledged by the government, she has fully performed under the Settlement Agreement. Beth Wittig's position is that the settlement funds are the "forfeited substitute asset funds of David C. Wittig," and that the ownership of those funds is affected by the reversal of defendant Wittig's convictions, which occurred after completion of the Settlement Agreement. In his response, defendant Wittig asserts that he does not seek to enforce the Settlement Agreement, and that the issue before the Court relates to restoring his interest in previously forfeited property, which he contends is not affected by the Settlement Agreement.

The Court thus begins its analysis on the premise that the Settlement Agreement is enforceable. The government argues that the Settlement Agreement is not affected by the subsequent reversal of the underlying criminal conviction and that it is entitled to keep the settlement funds as the benefit of its bargain with Beth Wittig. The cases cited by the government in support of its position can be distinguished from the circumstances of this case. Both cases cited by the government involved civil forfeiture proceedings, both involved efforts to void a forfeiture settlement, rather than enforce it, and neither case involved substitute assets. In *United States v. Bank of New York*,[20] the defendant executed a consent decree settling the government's civil forfeiture action against the proceeds of defendant's bank accounts.[21]

---

[20] 14 F.3d 756 (2d Cir. 1994).

[21] *Id.* at 758.

8

Defendant's criminal conviction was subsequently reversed and he moved pursuant to Fed. R. Civ. P. 60(b) to vacate the consent decree.[22] The district court denied the motion, finding that the criminal conviction was not the basis for the settlement of the civil forfeiture claim and that a dismissal in a criminal proceeding does not preclude the civil forfeiture of assets.[23] The Second Circuit affirmed, holding that the basis of the defendant's criminal conviction is irrelevant because the consent decree was made pursuant to the settlement of his civil forfeiture action, not his criminal action.[24]

Likewise, in *Schwartz v. United States*,[25] a civil forfeiture action was settled at a time when criminal racketeering convictions had been entered for the same activity underlying the civil forfeiture action.[26] Subsequently, the underlying activity was determined to have never been criminalized by the racketeering statute.[27] Defendants moved under Rule 60(b) to vacate the forfeiture settlement.[28] The Fourth Circuit affirmed the district court's denial of Rule 60(b) relief, holding that the forfeiture action was not void because the government took the forfeited assets pursuant to a civil settlement agreement.[29]

By contrast, the forfeiture proceedings in this case are criminal proceedings. Criminal

---

[22]*Id*.

[23]*Id*.

[24]*Id*. at 759.

[25]976 F.2d 213 (4th Cir. 1992), *cert. denied*, 507 U.S. 919 (1993).

[26]*Id*. at 215.

[27]*Id*. at 216.

[28]*Id*.

[29]*Id*. at 216-17.

9

forfeiture is part of the sentence imposed on the convicted defendant, and only property belonging to the defendant can be forfeited criminally.[30] Unlike the defendants in *Bank of America* and *Schwartz*, defendant's criminal conviction and jury verdicts of forfeiture were the basis for the Settlement Agreement, which stemmed from the ancillary proceedings and was incorporated into the Corrected Final Order of Forfeiture. The necessary consequence of reversal of defendant's convictions was to vacate the criminal forfeiture orders based on those convictions.[31] Thus, the issue of enforcement of the Settlement Agreement also dictates an analysis of defendant's interest in previously forfeited property by virtue of the vacated order of forfeiture.

Third parties who have claims to property that the government seeks to have criminally forfeited cannot intervene in the criminal action against the defendant.[32] Instead, they must wait until the court has entered a forfeiture order based on a criminal conviction, and then petition the court for a hearing to adjudicate their interest in the property. The procedures governing the ancillary proceeding are set forth in 21 U.S.C. § 853(n) and Fed. R. Crim. P. 32.2(c). Once the court or jury finds that the property is subject to forfeiture, and the court enters a preliminary order of forfeiture in accordance with Rule 32.2(b)(2), the government may publish notice of the forfeiture to third parties and commence an ancillary proceeding. The burden of proof is on the third party to demonstrate that he falls within one of two categories of third party claimants

---

[30]Stephen D. Cassella, Criminal Forfeiture Procedure: An Analysis of Developments in the law Regarding the Inclusion of a Forfeiture Judgment in the Sentence Imposed in a Criminal Case, 32 AM. J. CRIM. L. 55, 82 (2004).

[31]*See United States v. Lake*, 472 F.3d 1247, 1267 (10th Cir. 2007) (reversing and remanding forfeiture count for retrial after overturning underlying convictions); *United States v. Messino*, 122 F.3d 427, 430 (7th Cir. 1997).

[32]21 U.S.C. § 853(k).

described in § 853(n)(6).[33] To succeed, third parties must prove by a preponderance of the evidence that either (1) they had an interest in the property at the time of the offense that is superior to the government's interest;[34] or (2) they acquired the interest after the offense as a bona fide purchaser for value.[35] If the third party meets the burden of proof, the court will amend the preliminary order of forfeiture.[36] Once the third party hearings have been held, or time for filing third party claims has passed, the government has clear title to the property forfeited.[37]

Fed. R. Crim. P. 32.2(e) sets forth the procedure for amending an order for forfeiture to include substitute assets. If the government demonstrates that the requirements of the substitute assets statute, 21 U.S.C. § 853(p), have been satisfied, the court amends the order of forfeiture to include the substitute asset, subject to the resolution of third party rights in the ancillary proceeding.[38] Thus, property of the defendant is subject to forfeiture as substitute assets even if it is held in the name of a third party, but third parties have the right to challenge the forfeiture of the substitute asset in the ancillary proceeding.[39] Section 853(p) seems to require that the court

---

[33]*United States v. Saccoccia*, 354 F.3d 9, 14 (1st Cir. 2003).

[34]21 U.S.C. § 853(n)(6)(A).

[35]*Id.* § 853(n)(6)(B).

[36]*Id.*

[37]*Id.* § 853(n)(7).

[38]*See United States v. Watkins*, 320 F.3d 1279 (11th Cir. 2003) (resulting in unsecured creditors' and defendant's wife's unsuccessful challenge of forfeiture of cash as substitute asset); *United States v. Morgan*, 224 F.3d 339 (4th Cir. 2000) (defendant's wife's challenge of forfeiture of joint bank accounts as substitute assets).

[39]*See United States v. Strube*, 58 F. Supp. 2d 576 (M.D. Pa. 1999) (applying ancillary proceeding statute equally to substitute assets); *United States v. Infelise*, 938 F. Supp. 1352, 1363-64 (N.D. Ill. 1996) (holding that property may be forfeited as substitute asset even though title held by third party nominee).

find that the substitute asset belongs to the defendant before amending the order of forfeiture to include the property as a substitute asset.[40]

In this case, the Court entered a Preliminary Order of Forfeiture identifying property subject to forfeiture as a result of the jury verdicts of forfeiture. That order was modified to include as forfeitable property a list of substitute assets that encompassed all property of both defendant and Beth Wittig. Beth Wittig then filed an ancillary proceeding asserting her interest in both the property subject to forfeiture by virtue of the verdict and the substitute assets.

Because the government cannot forfeit property owned by a third party, the issue to be resolved in ancillary proceedings is ownership.[41] Like the directly forfeitable assets, the government's interest in the substitute assets vested at the time of the offense giving rise to the forfeiture.[42] The Settlement Agreement expressly provided that Beth Wittig would liquidate or transfer assets of defendant Wittig and Beth Wittig, whether jointly or individually held, for purposes of funding the $7 million compromise settlement fund. The agreement specified that this fund would be treated as the forfeited asset funds of defendant Wittig. Beth Wittig agreed to the forfeiture of the substitute assets to the government and waived any further right, title or interest in the funds. She fully performed under the Settlement Agreement and paid the compromise payment into the settlement fund in full, resulting in the rescission of any previous restraints on substitute assets not used for the settlement fund.

---

[40]*See United States v. Bennett*, No. S1 97 CR.639(JSM), 2003 WL 22208286 (S.D.N.Y. Sept. 24, 2003); Stephen D. Cassella, Criminal Forfeiture Procedure: An Analysis of Developments in the law Regarding the Inclusion of a Forfeiture Judgment in the Sentence Imposed in a Criminal Case, 32 AM. J. CRIM. L. 55, 91 (2004);

[41]Fed. R. Crim. P. 32.2(b)(2) (all ownership questions are deferred to the ancillary proceeding).

[42]*United States v. McHan*, 345 F.3d 262, 272 (4th Cir. 2003)

The Settlement Agreement specifically designated the $7,017,460.00 as "the forfeited substitute assets of David C. Wittig." The Corrected Final Order of Forfeiture ordered that, due to the unavailability of the Split-Dollar Payout and Imputed Income, $7,017,460 is forfeited to the Unites States "pursuant to and in accordance with the Settlement Agreement between the United States and Beth G. Wittig, which resolves all claims and rights to the Substitute Assets. . . ." The Court adopted the parties' characterization of the fund as substitute assets of defendant Wittig in the Corrected Final Order of Forfeiture. The legal characterization of the funds as the substitute assets of defendant Wittig is not, as the government asserts, based on Beth Wittig's label, but was confirmed by this Court's order. That Corrected Final Order of Forfeiture was vacated by the Tenth Circuit. Thus, defendant Wittig's property interests in the forfeited property, including the substitute assets, are restored by the Tenth Circuit's decision. Accordingly, the Court concludes that the government holds funds that are the substitute assets of defendant Wittig.

Although the Settlement Agreement cleared the way for forfeiture of the substitute assets, it did not provide the government with the right to defendant Wittig's property. Instead, it was the preliminary and final orders of forfeiture that provided the government with an interest superior to defendant Wittig's and, per the settlement, Beth Wittig. Thus, while the government retains its superior interest in the property *vis a vis* Beth Wittig per the Settlement Agreement, there is no current basis upon which it can assert an interest superior to defendant Wittig in the property, as the final order of forfeiture has been vacated. To the extent these funds are "back in play," as suggested by the government, they are in play as substitute assets of defendant Wittig. The government's request for reinstatement of its restraining order includes a request for pretrial

13

restraint of these substitute assets. The Tenth Circuit recently held in *United States v. Jarvis* that the government cannot impose pretrial restraint on substitute assets.[43] Thus, the Court is compelled to deny the broad restraint requested by the government.

The government's initial return of the $7,017,460.00 to defendant Wittig and legal counsel was the correct response to the Tenth Circuit's decision. Because both the government and Beth Wittig agree that the Settlement Agreement is enforceable, however, she continues to disclaim an interest in those assets, and the funds should not be returned to her. The Court thus orders the United States Marshal's Service to return the $7,017,460.00, plus any interest accrued, to defendant Wittig. Such check shall be made payable to defendant David C. Wittig and counsel, Jeffrey D. Morris. The funds shall be deposited into an interest-bearing account at Mr. Morris's law firm, created specifically for defendant Wittig's funds. Per the conditions of release imposed in this case, no transfer in excess of $25,000 shall occur without first obtaining approval of the Court.

**IT IS THEREFORE ORDERED BY THE COURT** that the government's Motion to Reinstate Restraining Order (Doc. 805) is DENIED with respect to the substitute assets of defendant Wittig, in the amount of $7,017,460.00 plus interest. The United States Marshal's Service shall return the funds to defendant and defense counsel as directed in this Order.

**IT IS SO ORDERED.**

Dated this 20th day of December 2007.

                                          S/ Julie A. Robinson
                                          Julie A. Robinson
                                          United States District Judge

---

[43] 499 F.3d 1196, 1204 (10th Cir. 2007).