lml

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>)<br>DAVID C. WITTIG and )<br>DOUGLAS T. LAKE, )<br>)<br>Defendants. )<br>_____ ) | Case No. 03-40142-JAR |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant Douglas Lake's Motions for subpoenas issued pursuant to Fed. R. Crim. P. 17(c) (Docs. 875, 876). The government has filed a Response in Opposition (Doc. 877). For reasons set forth in detail below, defendant's motions are denied.

Defendant requests the Court permit defendant to issue subpoenas duces tecum to Lankler Siffert & Wohl, LLP, Westar's criminal counsel, for

> Any and all communications (including emails), correspondence, notes or other documents by and between John T. Siffert, Charles T. Spada, and/or Lankler Siffert & Wohl, LLP in their capacity as counsel for Westar Energy, and the United States Attorneys Office for the District of Kansas and/or the Department of Justice, between July 1, 2002 and December 3, 2003.

(hereinafter "Lankler, Siffert & Wohl subpoena").

Defendant makes a similar request for Debevoise & Plimpton, LLP, counsel for Westar's Special Committee of the Board of Directors:

> Any and all communications (including emails), correspondence, notes, or other documents by and between Bruce E. Yannett, Jeffrey I. Lang, and/or Debevoise & Plimpton, LLP in their capacity as counsel for Westar Energy's Special Committee of the Board of Directors, and the United States Attorneys Office for the District of Kansas and/or the Department of Justice, between July 1, 2002 and December 3, 2003.

(hereinafter "Debevoise & Plimpton subpoena").

Defendant contends that these documents and records sought are relevant and evidentiary because, "if they exist, they go directly to establish whether there was an agreement or cooperation—formal or informal—between the Department of Justice and Westar Energy . . . and whether, as a result, there is bias generated by efforts of Westar to avoid prosecution by providing assistance and materials to, and cooperating with, government agents or prosecutors investigating the case."

With respect to the Lankler Siffert & Wohl subpoena, defendant contends that the existence of any agreement is relevant to the issue of whether defendant's Sixth Amendment rights "were compromised by collusion between [Westar] and the government and whether [Westar] (and necessarily company representatives who may testify) maintain a bias in favor of [Westar], which is a proper subject of impeachment." With respect to the Debevoise & Plimpton subpoena, defendant contends that such communications are relevant to show whether defendant's Sixth Amendment rights were impacted by government efforts to influence Westar into refusing or resisting payment of legal fees or capping legal fee payments to defendant. Defendant further maintains that it is clear from sworn testimony of Jeffrey I. Lang, a Debevoise lawyer, that the Debevoise report was provided to the government before it was released otherwise, which he contends is a "clear indication of communications between the Debevoise

2

attorneys and the Department of Justice, communications that may well reveal agreements—tacit or explicit—as to [Westar's] ultimate status at the conclusion of the government's investigation."

Rule 17(c) is "not intended to provide an additional means of discovery," but "to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials.[1] "In other words, Rule 17(c) is not a discovery tool but offers compulsory process for securing specific, identifiable evidence for trial."[2]

A party seeking a subpoena duces tecum under Rule 17(c) must establish:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."[3]

The Supreme Court has summarized the moving party's burden as clearing the three hurdles of relevancy, admissibility, and specificity.[4]

That the requested material is "potentially" relevant or admissible is not enough, for both tests must be satisfied when the evidence is sought.[5] There must be a "sufficient likelihood" that the requested material is "relevant to the offenses charged in the indictment," and a "sufficient preliminary showing that . . . [the requested material] contains evidence admissible with respect

---

[1] *United States v. King*, 164 F.R.D. 542, 545 (D. Kan. 1996) (quoting *United States v. Nixon*, 418 U.S. 683, 699-700 (1974)).

[2] *Id*. (quoting *United States v. Jackson*, 155 F.R.D. 664, 667 (D. Kan. 1994)).

[3] *United States v. Abdush-Shakur*, 465 F.3d 458, 467 (10th Cir. 2006) (quoting *Nixon*, 418 U.S. at 699-700).

[4] *Nixon*, 418 U.S. at 700.

[5] *United States v. Anderson*, 31 F. Supp. 2d 933, 944 (D. Kan. 1998) (citing *King*, 164 F.R.D. at 545).

3

to the offense charged."[6]  Conclusory allegations of relevance and admissibility are insufficient.[7]

Specificity is the most difficult hurdle to overcome.[8]  "The specificity requirement ensures that Rule 17(c) subpoenas are used only to secure for trial certain documents or sharply defined groups of documents."[9]  "The specificity requirement also prevents the moving party from using the Rule 17(c) subpoena as a license for what the Supreme Court . . . decried as a 'fishing expedition to see what may turn up.'"[10]

The Court, in its discretion, finds that defendant is not entitled to the subpoenas. Defendant's proposed subpoenas clearly resemble discovery requests, employing such terms as "any and all" documents or communications, or "includes, without limitation."  Defendant's admission that he needs time to receive and analyze these records, "if they exist," further indicates that he is on an improper fishing expedition.  Defendant's claim that he might be able to use the information sought, after "review and analysis," in the impeachment of Westar employees who might testify at trial also falls short.  Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial and is not properly obtained through a Rule 17(c) subpoena.[11]

Nor does defendant explain how an agreement between the government and Westar somehow compromised his Sixth Amendment rights.  Defendant has had the assistance of his

---

[6]*Id*. (quoting *Nixon*, 418 U.S. at 700).

[7]*Id*.

[8]*Id*. (citing *King*, 164 F.R.D. at 545).

[9]*Id*.

[10]*Id*. (quoting *Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951)).

[11]*Nixon*, 418 U.S. 683 at 701-02 (citation omitted).

choice of several lawyers throughout these proceedings, and continues to be represented by five attorneys for the firm of Blackwell Sanders.[12]

Defendant also fails to explain how any such agreement between Westar and the government would relate to the charges against him. Defendant's assertion that Westar was the target of prosecution instead of the victim in this case is purely speculative. This case has been tried twice. In the course of the trials, a number of current and former Westar employees, officers, directors, and/or board members were called as witnesses by the government and/or by the defendants. For example, the man who served as general counsel for Westar before, and at the time of the government's investigation, was called as a defense witness. In the testimony of various Westar witnesses, there was nothing to suggest that Westar refused or resisted payment at the behest of the government. Indeed, Westar paid the defendants' attorneys fees until after the indictment, when the Court entered a temporary restraining order, based on its legal analysis of the employment contracts and state law, and the federal criminal and civil forfeiture statutes. Subsequently, the Court lifted the restraining order. Thereafter, and throughout this protracted case, the complex interplay of federal criminal and civil forfeiture statutes and state corporate, indemnification and contract law, as applied to an evolving, and still developing procedural history, has generated intense litigation on the very issue of Westar's obligation to advance and/or pay the defendants' attorney fees, and generated several rulings from this Court, at different stages of this proceeding. In this litigation over attorney fees, there was nothing to suggest that Westar refused or resisted payment at the behest of the government. In short, defendant's motion for subpoenaes is based on speculation and conjecture.

---

[12] The government notes in its response that as of January 5, 2008, former counsel Edward Little has yet to withdraw from the case, as previously represented to the Court.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant Douglas Lake's motions for subpoenas issued pursuant to Rule 17(c) (Docs. 875, 876) are DENIED.

IT IS SO ORDERED.

Dated this 4th day of February 2008.

                                              S/ Julie A. Robinson
                                              Julie A. Robinson
                                              United States District Judge