lml

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No. 03-40142-JAR |
| ) | |
| ) | |
| DAVID C. WITTIG and ) | |
| DOUGLAS T. LAKE, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant Douglas Lake's third Motion for Subpoena Issued Pursuant to Fed. R. Crim. P. 17(c) (Doc. 881). The government has filed a Response in Opposition (Doc. 877). A hearing was held April 14, 2008, at which time the Court directed further briefing on the issues of standing and specificity. The government has also filed its opposition to the instant motion as well as a separate motion for a subpoena issued to Westar (Doc. 910).[1] Defendant moved to strike the government's opposition (Doc. 911) on the grounds that the government lacks standing to object to the issuance of subpoenas pursuant to Rule 17(c). The Court has considered the submissions and oral arguments of the parties and is now prepared to rule. For reasons set forth in detail below, defendant's motions are denied.

**I.  Background**

On January 8, 2008, defendant sought two subpoenas issued pursuant to Rule 17(c)

---

[1]The Court will address the Motion for Rule 17(c) subpoena issued to Westar (Doc. 896) in a separate order.

directed to the law firms of Debevoise and Plimpton and Lankler Siffert and Wohl, LLP (Docs. 875, 876). On February 4, 2008, this Court denied both motions (Doc. 878), ruling that defendant did not meet the test for issuance of such subpoenas set forth by the Supreme Court in *United States v. Nixon*.[2] In its Order, the Court analyzed the *Nixon* test, which summarizes the moving party's burden as clearing the three hurdles of relevancy, admissibility and specificity.[3] The Court will not restate the text of its analysis in its entirety, but instead incorporates the Order by reference and relies on it as necessary in ruling on the instant motion.

On February 25, 2008, defendant filed the instant motion pursuant to Rule 17(c) (Doc. 881), requesting the Court permit defendant to issue a subpoena duces tecum to John T. Siffert, of Lankler Siffert & Wohl, for

> Communications (including emails), correspondence, notes, or
> other documents by and between John T. Siffert, in his capacity as
> counsel for Westar Energy, and the United States Attorneys Office
> for the District of Kansas and/or the Department of Justice
> regarding Westar Energy's status in a criminal investigation
> regarding Westar, between date on which Gilman sent bill to Irick
> rec'd bill November 8, 2002 and November 27, 2002.

Defendant submits in support of the motion his affidavit that states Mr. Siffert officed in the same building as one of defendant's previous lawyers, Mr. Fitzpatrick. While defendant was meeting with Fitzpatrick on or about November 27, 2002, Siffert entered the office, displayed defendant's most recent legal bill that had been submitted for payment, and stated that it would be a "bad idea" for Lake to press for payment of legal fees to Westar for indemnification and that such a demand "wouldn't go over well with Hathaway." Defendant states that he interpreted

---

[2]418 U.S. 683, 700 (1974).

[3]*Id.*

this statement as a threat by Mr. Siffert. Defendant also attaches a copy of the so-called "Holder Memorandum."

**II.    Discussion**

    **A.    Standing**

The first issue raised by defendant is whether the government has standing to object to the issuance of the proposed subpoena. Defendant argues that objection to the issuance of the subpoena is, in effect, a motion to quash the subpoena. Thus, defendant argues, only the subpoenaed third party and not the government, has a proprietary interest in the requested materials, and only the third party can assert that compliance with the subpoena would be unreasonable or oppressive. However, the cases cited by defendant in support of this argument apply in cases where a third-party subpoena is issued and the government thereafter files a motion to quash the subpoena.[4] This case is not in the same procedural posture, as the subpoenas have not yet been served, and the government merely objects to their issuance. The Court finds that the government, as opposing party, has a right to be heard on a motion presented for the Court's consideration.[5]

More importantly, standing is really a non-issue in this case because the Court "has an interest in preserving the proper procedure prescribed by the Rules of Criminal Procedure, irrespective of the desires of the parties."[6] The Court must ensure that Rule 17(c) does not

---

[4]*See United States v. Daniels*, 95 F. Supp. 2d 1160, 1164 (D. Kan. 2000); *United States v. Nachamie*, 91 F. Supp. 2d 552, 558-61 (S.D.N.Y. 2000); *United States v. Tomison*, 969 F. Supp. 587, 595-96 (E.D. Cal. 1997).

[5]*See United States v. Mondi*, No. 1 L01 CR 00050, 2002 WL 188327, at *1 (W.D. Va. Feb. 6, 2002).

[6]*United States v. Beckford*, 964 F. Supp. 1010, 1025 (E.D. Va. 1997) (quoting *United States v. Ferguson*, 37 F.R.D. 6, 8 (D.D.C. 1965)).

become a means of conducting general discovery, which is not permitted in criminal cases.[7] Regardless of the government's position, the Court is required to examine the subpoena for compliance with the test set forth in *Nixon*.[8] The government's standing to object has no effect on the Court's independent obligations under Rule 17(c).[9]

   B.   **Legal Standard**

As a threshold matter, defendant argues that a relaxed evidentiary standard should apply when a Rule 17(c) subpoena is directed to a third party, rather than to the government. Defendant does not cite, nor could the Court find, any cases that support this proposition, although the *Nixon* Court suggested that a lesser standard might apply.[10] The Court agrees with the reasoning of other courts that have applied *Nixon* to assess the validity of Rule 17(c) subpoenas issued to third parties, and finds no compelling reason to employ a lesser standard in this case.[11] Thus, defendant's requested subpoena must meet the test set forth in *Nixon*, which requires a party to show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing

---

[7]*See Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951) ("[t]he burden is on the court to see that the subpoena is good in its entirety and it is not upon the [subpoenaed party] to cull the good from the bad.").

[8]*United States v. Nixon*, 418 U.S. 683, 700 (1974).

[9]*Mondi*, 2002 WL 188327, at *2 (citing *Beckford*, 964 F. Supp. at 1025).

[10]*Nixon*, 418 U.S. at 700 n.12.

[11]*See, e.g., United States v. Ferguson*, No. 06CR137 (CFD), 2007 WL 2815068, at *3 (D. Conn. Sept. 23, 2007) (citing cases).

expedition."[12]

There are three obstacles to issuance of a Rule 17(c) subpoena: relevancy, admissibility, and specificity.[13] The Court finds that defendant has failed to satisfy this test.

### *Specificity*

Specificity is the most difficult hurdle to overcome.[14] "The specificity requirement ensures that Rule 17(c) subpoenas are used only to secure for trial certain documents or sharply defined groups of documents."[15] "The specificity requirement also prevents the moving party from using the Rule 17(c) subpoena as a license for what the Supreme Court . . . decried as a 'fishing expedition to see what may turn up.'"[16]

Defendant contends that the subpoena to Siffert satisfies the specificity hurdle because it identifies in detail the items sought, communications between Siffert and the United States Attorney's Office for the District of Kansas and/or the Department of Justice, and further describes in detail the content, communications "regarding Westar Energy's status in a criminal investigation regarding Westar." A request will usually be sufficiently specific where it limits documents to a reasonable period of time and states with reasonable precision the subjects to which the documents relate.[17] However, the mere hope of discovering favorable evidence is

---

[12]*United States v. Abdush-Shakur*, 465 F.3d 458, 467 (10th Cir. 2006) (citing *Nixon*, 418 U.S. at 699-700).

[13]*Id*.

[14]*United States v. Anderson*, 31 F. Supp. 2d 933, 944 (D. Kan. 1998) (citations omitted).

[15]*Id*.

[16]*Id*. (quoting *Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951)).

[17]*United States v. RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. 158, 162 (E.D.N.Y. 2005).

5

insufficient to support issuance of a subpoena duces tecum.[18] The specificity and relevance requirements demand more than the title of a document and conjecture concerning its contents.[19] The specificity requirement ensures that a Rule 17(c) subpoena will not be used just to see "what may turn up."[20]

Such is the case here. Although the proposed subpoena narrows the subject matter as well as the date range and recipient, it continues to read like a civil discovery request, including a broad description of materials requested and an expansive "Definitions" section that seeks "each" and "every," "any" and "all," "without limitation," "however denominated." Moreover, although the present motion removes the wording "if they exist," with regards to the documents sought, counsel for defendant concedes that they do not know whether any such documents exist. Defendant has not met the specificity requirement.

*Relevance and Admissibility*

That the requested material is "potentially" relevant or admissible is not enough, for both tests must be satisfied when the evidence is sought.[21] There must be a "sufficient likelihood" that the requested material is "relevant to the offenses charged in the indictment," and a "sufficient preliminary showing that . . . [the requested material] contains evidence admissible with respect to the offense charged."[22] Conclusory allegations of relevance and admissibility are

---

[18]*See United States v. Ary*, No. 05-10053-JTM, 2005 WL 2372743, at *3 (D. Kan. Sept. 27, 2005) (citing *United States v. Jackson*, 155 F.R.D. 664, 667 (D. Kan. 1994)).

[19]*United States v. Hardy*, 224 F.3d 752, 755 (8th Cir. 2000).

[20]*United States v. Libby*, 432 F. Supp. 2d 26, 32 (D.D.C. 2006).

[21]*United States v. Anderson*, 31 F. Supp. 2d 933, 944 (D. Kan. 1998) (citation omitted).

[22]*Id.* (quoting *Nixon*, 418 U.S. at 700).

insufficient.[23]

Defendant argues that the documents sought are relevant "because they go directly to [defendant's] defenses, by establishing that there were communications between the Department of Justice and Westar and whether, as a result, the Department of Justice coerced Westar into cooperation against defendants in this matter." Along with his affidavit, defendant attaches the "Holder Memorandum," a June 1999 directive by then-Deputy Attorney General Eric Holder setting out factors to be considered by federal prosecutors when deciding whether to criminally charge a corporation. Among these factors is the consideration of whether the corporation appears to be protecting its culpable employees and agents evidenced, among other things, by advancement of attorneys fees. Defendant argues that any communications about the issue of Westar's fee advancement in the government's decision whether to criminally charge the company "goes beyond impeachment and bias evidence to affirmatively show potential strategies and/or agreements by and between Westar and the Department of Justice regarding cooperation with the investigation." At the April 14, 2008 hearing, counsel for defendant further explained that "we're looking for . . . documents that show other focuses of this investigation—preindictment."

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[24] In this case, defendant is charged, *inter alia*, with conspiracy to commit wire fraud, money laundering and circumvention of internal controls while employed

---

[23]*Id*.

[24]Fed. R. Evid. 401.

by Westar. The documents defendant seeks do not relate to whether or not he committed any of these or other acts alleged in the First Superseding Indictment. Indeed, the present Rule 17(c) motion omits any previous claim that the materials sought might reveal a violation of any Fifth or Sixth Amendment rights. For the reasons set forth in detail in its previous Order, the Court finds that defendant's present motion for subpoena is based on speculation and conjecture.

Defendant also contends that he is seeking the material for impeachment purposes in the cross-examination of certain former Westar employees, including Richard Terrill, Frank Becker, Gene Budig, Jane Sadaka and Carl Koupal. The term "impeachment" also refers to the bias or interest of a witness, the witness's ability to observe an event in issue, or a witness's prior statement that is inconsistent with his or her current testimony.[25] Defendant argues that it is highly likely that these same witnesses will testify at trial and will be subject to examination and/or cross-examination regarding the documents it seeks in the present motion.

Generally, prior to trial, impeachment materials may not be obtained through a Rule 17(c) subpoena because such materials fail *Nixon's* admissibility requirement.[26] As defendant points out, some courts have concluded that when a person is almost certain to testify as a witness at trial and there is an indication of what that testimony will be, then pre-trial production is appropriate.[27] But, as defendant also points out, impeachment evidence only ripens into

---

[25]*United States v. Shanahan*, No. S1-4:07 CR 175 JCH, 2008 WL 619213, at *3 (E.D. Mo. Mar. 3, 2008) (citing *Berry v. Oswalt*, 143 F.3d 1127, 1132 (8th Cir. 1998)).

[26]*Nixon*, 418 U.S. at 701 ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial.").

[27]*See United States v. Libby*, 432 F. Supp. 2d 26, 36 (D.D.C. 2006) (citing *United States v. LaRouche Campaign*, 841 F.2d 1176, 1180 (1st Cir. 1988)) (concluding that it was proper to disclose impeachment evidence before trial pursuant to a Rule 17(c) subpoena because the "putative key witness, whose general testimony is already known, is scheduled to testify").

8

admissible evidence after the witness has presented direct testimony at trial.[28]  Nevertheless, the fact that the requested documents *might* be admissible cannot overcome the Court's ruling on relevance and specificity.

Accordingly, the Court finds that because defendant's Rule 17(c) motion does not meet the *Nixon* test, it cannot permit issuance of the subpoena duces tecum to Siffert.  Defendant's motion is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion to Strike (Doc. 911) and Motion Pursuant to Rule 17(c) (Doc. 881) are DENIED.

IT IS SO ORDERED.

Dated this 12th day of June 2008.

                                         S/ Julie A. Robinson
                                        Julie A. Robinson
                                        United States District Judge

---

[28]*Id*. (citing *United States v. Cuthbertson*, 630 F.2d 139, 145-46 (3d Cir. 1980)).