lml

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No. 03-40142-JAR |
| ) | |
| DAVID C. WITTIG and ) | |
| DOUGLAS T. LAKE, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant Douglas Lake's fourth Motion for subpoena issued pursuant to Fed. R. Crim. P. 17(c) (Doc. 896). The government has filed a Response in Opposition (Doc. 910). Defendant moved to strike the government's opposition (Doc. 911) on the grounds that the government lacks standing to object to the issuance of subpoenas pursuant to Rule 17(c). The Court has considered the submissions of the parties and is now prepared to rule. For reasons set forth in detail below, defendant's motion to strike is denied as moot and his Rule 17(c) motion is granted in part and denied in part.

The Court has entered two Orders denying defendant's previous Rule 17(c) motions (Docs. 878 and 929), ruling that defendant did not meet the test for issuance of such subpoenas set forth by the Supreme Court in *United States v. Nixon*.[1] Those Orders summarized the *Nixon* test, which sets forth the moving party's burden as clearing the three hurdles of relevancy,

---

[1] 418 U.S. 683, 700 (1974).

admissibility and specificity.[2]  The Court also ruled that the government has standing to object to the issuance of Rule 17(c) motions, although it does not have standing to move to quash any subpoena issued pursuant to that rule.[3]  The Court will not restate the text of its analysis in its entirety, but instead incorporates the Orders by reference and relies on them as necessary in ruling on the instant motion.

On April 2, 2008, defendant filed the instant motion pursuant to Rule 17(c) (Doc. 896), requesting the Court permit issuance of a subpoena *duces tecum* to the Custodian of Records of Westar Energy, Inc. ("Westar" or "the Company") seeking pretrial production of nine categories of documents as described in the subpoena.  The Court will address each category in turn.

> **1. Documents Evidencing the Strategic Planning and Corporate Development Plan presented at July 18, 1990 Board of Directors Meeting**

Defendant asserts that these records are relevant and evidentiary because they go directly to defendant Lake's defenses by establishing that the diversification strategy and actions to pursue the strategy were settled upon and well on their way to being implemented prior to his joining Westar.  He argues that these documents will demonstrate that it was the decisions of the Board of Directors that implemented the diversification strategy, and that only upon the Board's direction did the strategy grow to include decisions such as the split and merge, as identified in the First Superseding Indictment.

The government objects on the grounds that these records relate to when KP & L was considering combining with KG & E to form Western Resources and that defendant already has evidence of the fact he joined Westar when the company was exploring diversification into non-

---

[2] *Id*.

[3] (Doc. 929.)

2

regulated industries.

The Court denies this request as it is not relevant to whether or not defendant committed any of the acts alleged in the First Superseding Indictment. The merger between KP &L and KG & E, both regulated industries, was separate and distinct from the later strategy to diversify into non-regulated industries.

### 2. Certain Director and Officer Questionnaires

Defendant requests the following Directors and Officers Questionnaires: Larry Irick (2001-2002); Bill Moore (1996-1997, 2001); Steve Kitchen (1996, 1998, 1999); Wayne Kitchen (2000); John Hayes (1999); Jerry Courington 1999); Doug Henry (1999, 2001); Richard Ginsburg (Protection One—2002); Carl Koupal (2000); Darius Nevin (Protection One—2002); Shane Mathis (2002); and Les Morgan (2002). Defendant asserts that these records are relevant and evidentiary because they go to defendant's defenses, by establishing certain business practices in existence at Westar and Protection One prior to, during and after defendant's tenure with the Company. Defendant contends that the Tenth Circuit specifically noted the relevance of the many D & O questionnaires introduced into evidence at the previous trial.[4] Defendant asserts that the requested documents will merely fill in the missing D & O questionnaires that the government has not produced.

Although not conceding that such evidence is relevant, the government has no objection to this request, and notes that no request was ever previously made by defendant to provide these documents. Accordingly, defendant's request for subpoena is granted with respect to this category of documents.

---

[4] *United States v. Lake*, 472 F.3d 1247, 1252-53 (10th Cir. 2007).

### 3. Certain Board of Director and Human Resources Committee Minutes

Defendant requests the following Board of Director Minutes: Unredacted minutes from the December 6, 2002 special meeting of the Board of Directors of Westar; a signed copy of the November 6, 2002 special meeting of the Board of Directors of Westar; a signed copy of the November 15, 2002 special meeting of the Board of Directors of Westar; a signed copy of the December 4, 2002 special meeting of the Board of Directors of Westar; all Board of Directors or Human Resource Committee minutes showing approval of payments to any Westar employees that held Series C Preferred Stock of Guardian International, Inc. as a result of the redemption of the Series C Stock by Guardian; and all Board of Directors or Human Resource Committee minutes showing presentations about, and approval of payments to any Westar employees as a result of the redemption of stock as a result of the sale of Guardian International, Inc. to Devcon International Corp.

Defendant contends that these records are relevant and evidentiary because they identify pertinent facts related to the charges against him and to his defenses, and counter the government's alleged "scheme to loot Westar." Although the majority of the Board of Directors minutes have been produced, the limited Board of Director minute documents and the Human Resources Committee minutes are needed to complete documents in defendant's possession for use at trial. The Board's approval of payments to Westar employees holding Guardian stock is relevant because it relates directly to the Board's decision regarding the distribution of the Guardian Restricted Stock Units in 2002 as valid compensation that the Board intended to issue.

Although not conceding that such evidence is relevant, the government has no objection to this request and notes that no request was ever previously made by defendant to provide these

documents. Accordingly, defendant's request for subpoena is granted with respect to this category of documents.

> 4. **September 30, 2003 Appraisal of the Guardian CDE Preferred Stock**

Defendant requests the documents supporting the September 30, 2003 appraisal of the Guardian Preferred Stock. Westar disclosed in its 2004 proxy that the Guardian shares were revalued as of September 30, 2003: "The market value as of December 31, 2003 is based on an appraised value as of September 30, 2003 of $803 per share of Guardian Series C preferred stock, $381 per share of Guardian Series D preferred stock and $263 per share of Guardian Series E preferred stock." Defendant contends that the narrowly described records sought supporting the appraisal are relevant and evidentiary because the appraisal refutes the assertions made at the previous trial that the revaluation was part of a scheme by defendants to undervalue the Guardian Stock, and it is further evidence that there was an inherent risk in the Guardian RSU's that were received in 2002. Defendant argues that because Westar believed it was necessary to revalue the Guardian Stock, and because the valuation in 2003 lowered the value below the 2001 valuation, this rebuts the inference by the government that there was anything nefarious about the 2001 valuation.

The government objects on the grounds that the appraisal was done after defendant Lake was gone from the company and that the evidence presented concerning the Guardian stock at trial was in conformity with the allegations in the First Superseding Indictment, that Wittig and Lake concealed from the Board and Human Resources Committee that they were planning a "first quarter 2003" acquisition of Guardian by Protection One. This would have triggered, at the time, a $1000 per share redemption of Guardian preferred when defendants were telling other

5

executives that "there were currently no plans to do so." Thus, the government argues that any appraisal after the period alleged in the Indictment is irrelevant to the intent of defendants at the time of the Guardian incentive awarding and fails to meet the *Nixon* requirement that the "requested material is relevant to the offenses charged in the indictment and . . . contain evidence admissible with respect to the offenses charged."[5]

Defendant's request for subpoena is granted with respect to this category of documents, as the documents are relevant to his defense that Guardian stock was inherently risky. The fact that the valuation was done after defendants left the company can be addressed on cross examination or through other evidence.

### 5. Documents Identifying the Use of Luxury Boxes by Officers and/or Board of Directors and/or Spouses of the Officers and Board of Directors at Kansas State University, University of Kansas, Kansas Speedway, and the Flint Oak Hunting Club from 1996-2002

Defendant requests documents identifying the use of tickets or luxury boxes by Officers, the Board of Directors and/or Family Members of the Officers and Board of Directors at Kansas State University, University of Kansas and Kansas Speedway. Defendant further requests documents showing usage by officers, directors and their family members of the Flint Oak Hunting Club from 1996-2002. Defendant contends that these documents are relevant as they reflect perquisite compensation received by Officers or Directors received as part of employment by or association with Westar. The D & O questionnaires at issue specifically ask whether officers and directors received "personal entertainment and related expenses." These requested documents offer obvious illustration of both Westar's compensation and reporting

---

[5]*Nixon*, 418 U.S. at 700.

practices, bearing most directly on the issue of intent. These forms will also be contrasted with responses already in the defendant's possession.

The government objects, arguing that defendant offers no explanation concerning how the intent of third parties is relevant to his intent in failing to report perks. In any event, the government argues, no other executives or officers are charged in the Indictment.

Defendant's request for subpoena is granted with respect to this category of documents, as the documents are relevant to his defense that he lacked intent because of practices of Westar executives and the Board in not reporting these type of expenses.

### 6. Documents Identifying the Reimbursement of Country Club Membership Dues from 1996-2002

Defendant requests documents identifying the reimbursement of country club or social club membership dues from 1996-2002. Defendant contends that these documents are relevant because they will reveal perquisite compensation, both reported and unreported, that the Officers or Directors received as part of employment by or association with Westar. These are relevant to the issue of corporate practice at Westar to the extent it impacted intent.

The government objects on the grounds that defendant offers no evidence that these records exist, or if they do, how they are relevant to his intent.

Defendant's request for subpoena is granted with respect to this category of documents. Evidence that these records exist was demonstrated at the previous trials, where some officers and directors reported this reimbursement on their D & O questionnaires, which were admitted into evidence, and some did not. These documents are relevant to the issue of intent.

### 7. Documents Identifying the Use of Season Tickets to any Entertainment or Cultural Venue from 1996-2002

Defendant is requesting documents identifying the use of season tickets to any entertainment or cultural venue by officers and directors from 1996-2002 (other than the specific requests referred to in paragraph 6 above). Defendant offers the same rationale as argued in paragraph 5.

The government objects on the grounds that defendant offers no evidence that these records exist, or if they do, how they are relevant to his intent.

Defendant's request for subpoena is granted with respect to this category of documents, as the documents are relevant to his defense that he lacked intent because of practices of Westar executives and the Board in not reporting these type of expenses. As previously noted, the D & O questionnaires at issue specifically ask whether officers and directors received "personal entertainment and related expenses."

### 8. Documents and Reports Outlining Compensation and/or Benefits Owed to Douglas T. Lake since September 1, 2002

Defendant requests documents and reports outlining compensation and/or benefits owed to Mr. Lake since September 1, 2002 and money and stock held by Westar upon which Mr. Lake has a claim. Defendant contends these documents are relevant, as they go directly to Westar's loss and issues relating to forfeiture and sentencing.

The government objects on the grounds that loss is not an element of federal fraud. The government also argues that this evidence is not sought on any grounds going to defendant's defense, but rather for forfeiture and sentencing. In any event, defendant has counterclaimed against Westar in the arbitration proceedings and his request implicates the Court's limine order foreclosing any evidence at trial involving the arbitration action between defendant and Westar.

Defendant's request for subpoena is granted with respect to this category of documents.

In so ruling, the Court notes that this evidence is not admissible at trial on the underlying criminal counts, and may only be admissible during the forfeiture proceedings.

> 9. **All Billing Records from Cahill Gordon & Reindel, LLP to Westar from January 1, 1998-June 30, 2003**

Defendant requests all billing records from Cahill Gordon & Reindel, LLP to Westar from January 1, 1998-June 30, 2003. Defendant contends that these documents are relevant, as they go directly to the involvement of Westar's outside counsel in vetting and approving multiple issues. Certain records were admitted into evidence and relied on by both the government and defense in the previous trials. Although some very limited and redacted records have been produced, the records are not complete and therefore, the records sought will provide additional relevant information.

The government objects on the grounds that the records are not being sought for any specific purpose. Neither defendant has ever invoked an "advice of counsel" defense, argued advice of counsel in any opening or closing statement, nor asked for instructions on that defense.

Defendant's request for subpoena is granted with respect to this category of documents, to the extent they are relevant to an advice of counsel defense. The fact that defendant did not raise this issue in the previous trials does not preclude an attempt to raise the issue in the third trial. In so ruling, the Court does not offer an opinion as to the merits of such defense.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's fourth Motion Pursuant to Rule 17(c) (Doc. 896) is GRANTED in part and DENIED in part, as set forth above. The Court authorizes the issuance of a subpoena *duces tecum* to the Custodian of Records of Westar Energy, Inc. calling for production of the documents as specified herein.

**IT IS FURTHER ORDERED** that defendant's Motion to Strike (Doc. 911) is DENIED

as moot.

       IT IS SO ORDERED.

       Dated this  24th  day of June 2008.

                                         S/ Julie A. Robinson
                                        Julie A. Robinson
                                        United States District Judge