# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **Case No. 03-40142-JAR** |
| | ) | |
| | ) | |
| **DAVID C. WITTIG and** | ) | |
| **DOUGLAS T. LAKE,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## <u>MEMORANDUM ORDER AND OPINION</u>

This matter is before the Court on defendant Douglas Lake's Motion to Dismiss (Doc. 888) and Supplemental Motion to Dismiss (Doc. 913) all counts of the First Superseding Indictment ("Indictment"), and defendants' Joint Supplemental Motion to Dismiss Count 40 (Doc. 926). Co-defendant David Wittig has joined in Lake's motion and has filed a separate Motion to Strike or Otherwise Conform Count 1 (Doc. 915). The government opposes defendants' motions (Docs. 933, 949). The Court heard argument on July 21, 2008, and took the matter under advisement. After reviewing the parties' arguments and submissions, the Court is now prepared to rule. For the reasons stated below, the Court denies the motions with respect to defendants' claims based on the Double Jeopardy Clause.[1]

---

[1] In addition to the double jeopardy claims, defendants request dismissal of Counts 2 through 15, the Circumvention of Internal Control charges, for failure to state an offense. Defendants have represented that in the event the Court denies their double jeopardy claims, they intend to file an interlocutory appeal to the Tenth Circuit pursuant to *United States v. Wood*, 950 F.2d 638, 641-42 (10th Cir. 1991) (citing *Abney v. United States*, 431 U.S. 651, 662 (1977)). Accordingly, the Court will address the circumvention count issues that do not implicate the Double Jeopardy Clause in a separate order. Likewise, the Court will separately address defendants' other pretrial motions that do not seek dismissal of the Indictment.

## I.       Background

The facts and lengthy procedural history of this case are undisputed and the Court assumes the reader is familiar with the Tenth Circuit opinion that precipitates the matters before the Court, *United States v. Lake*.[2]  The Court will not restate the findings of the Tenth Circuit in detail, but will provide excerpts from the opinion as needed to frame its discussion.

The second trial against defendants resulted in guilty verdicts on all but a few counts, as well as forfeiture of defendants' interest in specific property.  On January 5, 2007, the Tenth Circuit dismissed with prejudice Counts 16 - 39, the wire fraud and money laundering counts, and remanded the remaining counts, conspiracy, circumvention of internal controls and forfeiture to this Court for retrial.[3]

Defendants contend that the scope and specific findings of the Tenth Circuit's decision require all surviving allegations "be reviewed in a new light cast by that decision."  Specifically, defendants argue that the government cannot so much as introduce evidence pertaining to the now dismissed charges of wire fraud and money laundering without violating the Double Jeopardy Clause of the United States Constitution.  They further contend that same principle requires the Court to strike those objects and overt acts listed in Count 1, the conspiracy charge, that pertain to the substantive counts of wire fraud or money laundering.  Yet defendants acknowledge that the remanded conspiracy count charges conspiracy to commit wire fraud, money laundering and circumvention of internal controls.

---

[2]472 F.3d 1247 (10th Cir. 2007).

[3]*Id.*

## II.    Analysis

This case requires an examination of the related concepts of collateral estoppel and double jeopardy.  The Double Jeopardy Clause protects against multiple punishments for the "same offense."[4]  The Clause embodies two broad principles: protection against a second prosecution for the same offense, whether after acquittal or conviction, and protection from multiple punishments for the same crime.[5]  Collateral estoppel prevents a party from relitigating an issue that has already been decided, and applies in criminal as well as civil cases.[6]

"[T]he Double Jeopardy Clause attaches special weight to judgments of acquittal.  A verdict of not guilty, whether rendered by the jury or directed by the trial judge, absolutely shields the defendant from retrial."[7]  "A reversal based on the insufficiency of the evidence has the same effect [as a not guilty verdict] because it means that no rational factfinder could have voted to convict the defendant. . . . [W]hen a reversal [of a conviction] rests upon the ground that the prosecution has failed to produce sufficient evidence to prove its case, the Double Jeopardy Clause bars the prosecutor from making a second attempt at conviction."[8]

A substantive crime and a conspiracy to commit that crime are not the "same offense" for double jeopardy purposes.[9]  Defendants do not assert that the Double Jeopardy Clause bars outright the retrial on conspiracy.  Instead, they argue that the collateral estoppel component of

---

[4] *North Carolina v. Pearce*, 359 U.S. 711, 717 (1969).

[5] *Smith v. Dinwiddie*, 510 F.3d 1180, 1186 (10th Cir. 2007).

[6] *Id.*  (citing *United States v. Oppenheimer*, 242 U.S. 85, 97 (1916)).

[7] *Tibbs v. Florida*, 457 U.S. 31, 41 (1982).

[8] *Id.* at 41-42.

[9] *United States v. Felix*, 503 U.S. 378, 389 (1992).

the Double Jeopardy Clause bars retrial on the conspiracy count because it requires relitigation of issues already resolved in the Tenth Circuit's reversal order, namely the falsity of the SEC reports and the value of defendants' personal travel.

In *Ashe v. Swenson*,[10] the Supreme Court held that the Double Jeopardy Clause encompasses the corollary doctrine of collateral estoppel.[11] "When an issue of ultimate fact has once been determined by a valid and final judgment," collateral estoppel precludes the same parties from litigating that same issue in any future lawsuit.[12] This principle bars only the relitigation of "ultimate issues" decided in a prior criminal proceeding.[13] Thus, collateral estoppel will not apply if a rational jury could have based its verdict upon an issue not decided in the prior case.[14]

In *Dowling v. United States*,[15] the Supreme Court declined to extend *Ashe* and collateral estoppel as far as "to exclude in all circumstances . . . relevant and probative evidence that is otherwise admissible under the Rules of Evidence simply because it relates to alleged criminal conduct for which a defendant has been acquitted."[16] Thus, "if an issue determined in a prior proceeding between the same parties . . . constitutes a necessary element of a subsequent prosecution, collateral estoppel will likely operate as a complete bar to the latter prosecution;

---

[10]397 U.S. 436 (1970).

[11]*Id*. at 444-46, 445 n.10.

[12]*Id*. at 443.

[13]*Smith v. Dinwiddie*, 510 F.3d 1180, 1181 (10th Cir. 2007).

[14]*Id*. (citing *Schiro v. Farley*, 510 U.S. 222, 232 (1994)).

[15]493 U.S. 342 (1990).

[16]*Id*. at 348.

otherwise, the doctrine at most may forestall the presentation of particular evidence and arguments."[17]  A fact previously determined in a criminal case is not an "ultimate fact" unless it was necessarily determined by the jury against the government and, in the second prosecution, that same fact is required to be proved beyond a reasonable doubt in order to convict.[18]  In other words, "[t]he key to reuse [of evidence] is independent significance: does the proof bear upon an issue (or issues) materially different from those determined at the former trial?"[19]

A.    Conspiracy Count 1

Guided by these principles, the Court turns to defendants' argument that certain facts were "necessarily determined" by the Tenth Circuit and that those facts constitute "ultimate issues" as to the conspiracy charge.  Defendants argue that the judicially directed acquittals on the wire fraud counts necessarily determined an ultimate issue of fact—that the SEC filings were not false as the government failed to show that the use of the corporate airplane ever exceeded $50,000 or 10% of either defendant's salary in any single year.  Because the government is foreclosed from relitigating either the falsity of the SEC filings or the question of whether the value of personal travel ever exceeded the SEC reporting threshold, defendants contend that the conspiracy charge necessarily fails and must be dismissed.

Counts 16-22 of the Indictment charged substantive wire fraud while Count 1 charges conspiracy to commit wire fraud, money laundering and circumvention of internal controls.  These are distinct crimes having distinct elements.  The elements of substantive wire fraud are

---

[17]*United States v. Dray*, 901 F.2d 1132, 1136 (1st Cir. 1990) (citing *United States v. Ricks*, 882 F.2d 885, 889 (4th Cir. 1989), *cert. denied*, 493 U.S. 1047 (1990)).

[18]*Untied States v. Wells*, 347 F.3d 280, 285 (8th Cir. 2003) (citing *Dowling*, 493 U.S. at 349-52).

[19]*Dray*, 901 F.2d at 1138.

(1) a scheme to defraud, (2) an interstate wire communication, and (3) a purpose to use the wire communication to execute the scheme.[20]  This requires a showing that the wires were actually used to further the scheme or artifice to defraud.  And, in this case, the Tenth Circuit held that because the SEC filings were required by law to be filed, the government must prove that they were false in order to meet the third element.[21]

By contrast, conspiracy requires proof that (1) the defendant entered into an agreement; (2) the agreement involved a violation of the law; (3) one of the members of the conspiracy committed an overt act; (4) the overt act was in furtherance of the conspiracy's object; and (5) the defendant willfully entered the conspiracy.[22]  The Court discusses each of the three objects of the conspiracy in turn.

### Conspiracy to commit wire fraud

To be guilty of conspiracy to commit wire fraud, the defendant must have the requisite intent to commit wire fraud.[23]  However, there is no specific intent requirement regarding use of the wire facilities.[24]  Conspiracy to commit wire fraud requires only that the government prove intent to use the wires or that use of the wires in furtherance of the scheme was reasonably foreseeable to the conspirators; defendant need not intend to cause the wire facilities to be used,

---

[20]*United States v. Lake*, 472 F.3d 1247, 1255 (10th Cir. 2007) (citing *United States v. Janusz*, 135 F.3d 1319, 1323 (10th Cir. 1998)).

[21]*Id*. at 1255-56 (citing *Parr v. United States*, 363 U.S. 370 (1960)).

[22]*United States v. Weidner*, 437 F.3d 1023, 1033 (10th Cir. 2006).

[23]*United States v. Richards*, 204 F.3d 177, 208 (5th Cir. 2000) (quotation omitted), *overruled on other grounds by United States v. Cotton*, 535 U.S. 625, 631 (2002).

[24]*Id*. (citation omitted).

nor is there a requirement to show any actual wirings.[25]  Thus, the government's burden is to demonstrate beyond a reasonable doubt that the alleged conspirators agreed to engage in a scheme to defraud in which they contemplated that the wire facilities would likely be used.[26]

Courts often face difficulty in determining which facts have been previously decided by the jury.[27]  The Tenth Circuit's reversal of the wire fraud convictions, however, spelled out in detail the basis for acquittal—that as a matter of law, there was insufficient evidence "from which the jury could conclude beyond a reasonable doubt that any of the reports wired to the SEC were false, fraudulent, or even misleading."[28]  Under *Parr*, these reports were required by law and because the government failed to prove that they contained anything false, the court could not see how their filing advanced the allegedly fraudulent scheme or that defendants' purpose in filing them was to advance the scheme.[29]  The court went on the explain why each of the seven filed reports were not false or fraudulent as far as the trial evidence showed, noting that even if the jury had been correctly instructed on the *Parr* requirement, it could not properly have found that the reports were false or fraudulent.[30]  Specifically, the court held that whether the reports were false depends on what is required to be reported and that the government did not

---

[25]*Id.* (citations omitted); *United States v. Wilburn*, 979 F.2d 858 (Table), 1992 WL 339063, at *1 (10th Cir. Nov. 17, 1992) (applying in a mail fraud case) (citing *United States v. Dray*, 901 F.2d 1132, 1137 (1st Cir.1990)). Mail fraud is analogous to wire fraud. *United States v. Puckett*, 692 F.2d 663, 669 n.6 (10th Cir. 1982).

[26]*Richards*, 204 F.3d at 208 (citations omitted).

[27]*See Ashe v. Swenson*, 397 U.S. 436, 444 (1970) (explaining that when judgment of acquittal is based on a general verdict, the reviewing tribunal must "examine the record of [the] prior proceeding, taking into account the pleadings, evidence, charge and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.").

[28]*United States v. Lake*, 472 F.3d 1247, 1260 (10th Cir. 2007).

[29]*Id.* at 1255-56.

[30]*Id.* at 1257.

show at trial that disclosure was required.[31]  After analyzing the reporting requirements for personal compensation, the court held that the SEC filings were not false because there was no evidence that the value of personal travel ever exceeded the reporting threshold.[32]

Not surprisingly, defendants seize upon this language as necessarily establishing an issue of ultimate fact.  While it is undisputed that the Tenth Circuit's reversal for insufficiency of the evidence bars retrial of the substantive wire fraud and money laundering charges, the Court disagrees with defendants' extrapolation of this ruling to the conspiracy charges remanded for retrial.  Nothing in the opinion suggests that the court found that the wires were not intended or reasonably foreseeable.  Indeed, the court explained by way of example that "defendants may have conspired to commit wire fraud without succeeding in committing wire fraud itself because the filings with the SEC fortuitously turned out to be accurate."[33]  And, the court directed that the jury in any retrial be specifically instructed on the SEC standard.[34]  Defendants equate the panel's ruling that the government's wire fraud evidence was insufficient *as a matter of law* with a *finding of fact* for purposes of collateral estoppel.  Although the Court doubts that this is the intended or necessary effect of the Tenth Circuit's ruling, it will proceed to analyze defendants' collateral estoppel claim on this faulty premise.

Even if certain facts were "necessarily determined" in the prior trial, however, those facts must constitute an ultimate issue regarding the conspiracy count to be retried in order to be

---

[31]*Id*. at 1257-58.

[32]*Id*. at 1258.

[33]*Id*. at 1263.

[34]*Id*.

subject to collateral estoppel. Defendants contend that in order to prove defendants had an illegal agreement, the government must prove that the documents they intended to wire were false, which requires a showing that the defendants' personal travel had a value that exceeded the SEC reporting threshold. Because the government is precluded from offering such evidence, defendants argue that it cannot establish an illegal agreement existed. "Given that a substantive and conspiracy offense involve separate elements, it is quite unlikely that a factual finding with respect to any particular act is 'essential' to proving the elements of conspiracy."[35] The issue of whether the wires were false is not an ultimate issue as to the charge of conspiracy to commit wire fraud, as it is clear that the government need not show any wirings, much less false wirings, to prove conspiracy to commit wire fraud. Thus, collateral estoppel does not act as a complete bar to retrial of the conspiracy count.

Plainly, this analysis begs the question: why would the Tenth Circuit have directed the jury to be instructed on the SEC personal benefits regulation if evidence of the filings and the value of defendants' personal travel were precluded? Defendants argued at the hearing that because they did not argue insufficiency of the evidence with respect to the conspiracy conviction on appeal, the Tenth Circuit did not consider whether retrial was barred, suggesting that the court's opinion had unintended results. In other words, reading between the lines, the Tenth Circuit suggests that if defendants had argued sufficiency of evidence, it would not have remanded the conspiracy count for retrial. This Court disagrees with defendants' characterization of the Tenth Circuit's opinion, which clearly directs retrial of the conspiracy and circumvention counts with a specific directive for instruction on the SEC regulation. If this

---

[35]*United States v. Yearwood*, 518 F.3d 220, 229 (4th Cir. 2008) (discussing retrial on drug trafficking conspiracy count after acquittal of subsequent crime of distribution of cocaine base).

Court were to apply collateral estoppel in the manner advocated by defendants, it would be doing so in contravention of that directive. The Court declines to take such a stance.

As noted above, evidence of wire fraud from the prior trial is not precluded by the reversal so long as it has independent significance to a conspiracy issue not actually determined by the reversal.[36] In this case, the government argues that collateral estoppel does not bar it from using evidence of the SEC filings because it will not be proving that defendants caused the submission of false wires to the SEC, but rather, that defendants agreed and intended for that to happen and that use of the wires was reasonably foreseeable. In other words, the government should be allowed to introduce evidence at the retrial that defendants made false SEC filings in a conspiracy to commit wire fraud. The new jury would not have to conclude beyond a reasonable doubt that defendants actually caused the submission of false wires, a necessary element of substantive wire fraud, but not a necessary element of conspiracy. The admissibility of such evidence is more appropriately decided on a motion in limine. As the Supreme Court noted in *Dowling*, evidence of conduct for which a defendant had previously been acquitted was admissible at a subsequent trial under Fed. R. Evid. 404(b).[37] Should the government offer evidence of the SEC filings and value of defendants' personal travel as direct evidence of an element of conspiracy to commit wire fraud, the Court will make an evaluation of its admissibility under the Double Jeopardy Clause in the context of all the proof to be offered by

---

[36]*United States v. Dray*, 901 F.2d 1132, 1138 (1st Cir. 1990).

[37]493 U.S. 342, 349 (1990).

the government of that element.[38]

Finally, although not specifically addressed in their double jeopardy claims, defendants argued at the hearing that the Tenth Circuit's ruling created a legal impossibility because defendants cannot conspire to commit a lawful act. In support of this argument, defendants point to the language in the Tenth Circuit opinion that "even if the jury had been correctly instructed, it could not properly have found that the reports were false or fraudulent."[39] As a result, defendants are charged with a conspiracy to commit a series of lawful acts because it is not a crime to submit true statements to the SEC. Defendants overlook, however, the language in the Tenth Circuit opinion that, "[o]f course, a filing required by law could be used to further a scheme if it was itself false or fraudulent; but the government did not show that there was anything misleading in the reports."[40] Thus, at best, the effect of the ruling was to create a factual rather than legal impossibility, which is not a defense to conspiracy.[41] The Circuit recognized as much when it explained, "[f]or example, the defendants may have conspired to commit wire fraud without succeeding in committing wire fraud itself because the filings with the SEC fortuitously turned out to be accurate."[42] Moreover, the law is well settled that if the object of a conspiracy is lawful, the conspiracy is still criminal if unlawful means are intended or

---

[38]*See United States v. Mahaffy*, 499 F. Supp. 2d 291, 297-98 (E.D.N.Y. 2007), *aff'd* 2008 WL 2675798 (2d Cir. July 7, 2008) (discussing retrial of conspiracy to commit securities fraud charge after acquittal of substantive securities fraud charge where government did not contest the jury necessarily decided that defendant's statement to the SEC was not materially false).

[39]*Lake*, 472 F.3d at 1257.

[40]*Id*. at 1255.

[41]*See United States v. Palmer*, 203 F.3d 55, 64 n.3 (1st Cir. 2000) (collecting cases).

[42]*Lake*, 472 F.3d at 1263.

reasonably foreseeable.[43]   The Court declines to dismiss Count 1 on these grounds.

### Conspiracy to Circumvent Internal Controls

Likewise, the government is not precluded from introducing evidence of value of the flights with respect to the charge of conspiracy to circumvent internal controls and, necessarily, the substantive circumvention counts.  The Tenth Circuit set aside the substantive circumvention convictions, but not on sufficiency of the evidence grounds.  Instead, the court found reversible error based on this Court's failure to instruct the jury on what disclosure was required by the SEC with respect to defendants' personal use of the corporate aircraft with respect to the D & O forms.[44]   The court explained,

> As we previously discussed in setting aside the wire-fraud convictions, Regulation S-K required the disclosure of an executive's personal use of corporate aircraft only if the additional cost incurred by the corporation exceeded a threshold equal to the lesser of $50,000 or 10% of the executive's salary plus bonuses during the year, and the government offered no substantial proof that this threshold was ever exceeded by either defendant.  Thus, there was no evidence that the defendants' failure to disclose information in the D & O forms ever caused a material omission in SEC reports.  **To be sure, this fact is not dispositive of defendants' intent.**  They may have thought that there was a risk that their travel would be publicly reported, and fear of such reporting may have caused them to refuse to report their personal travel on the D & O forms.  Nevertheless, in assessing the state of mind of each defendant, the jury would likely be influenced by knowing that the omission on the D & O forms apparently did not cause any error in the reports to the SEC.[45]

The defendants' attempt to extrapolate the Tenth Circuit's language regarding

---

[43]*Pettibone v. United States*, 148 U.S. 197, 203 (1893); *United States v. Kendall*, 766 F.2d 1426, 1431 (10th Cir. 1985).

[44]*Lake*, 472 F.3d at 1261-62.

[45]*Id*. at 1262 (emphasis added).

insufficient evidence of the falsity of the SEC filings in the wire fraud charges is foreclosed by the court's own language quoted above.  Unlike the wire fraud convictions, the Tenth Circuit did not reverse the circumvention counts on substantial evidence grounds.  And, unlike the SEC filings in the wire fraud counts, the circumvention counts do not require the government to prove that the D & O forms were in fact false; instead, the government must show that defendants' failure to report personal use of corporate aircraft was made with the requisite intent to circumvent or fail to implement a system of internal accounting controls or falsification of a book, record or account.[46]  In order to prove conspiracy to circumvent internal controls, the government must show that the conspirators agreed to commit an offense that requires knowing and willful circumvention of internal controls instituted to satisfy SEC requirements.[47]  In order for a jury to assess the defendants' intent in not reporting the corporate airplane travel, the Court must instruct on what disclosure was required by the SEC.  Thus, evidence of the value of the flights would be relevant both to the issue of materiality of the omission and defendants' intent. Otherwise, this Court would be left with the panel's directive to instruct the jury as to the S-K standard, without any evidence of value.  As discussed above, the Court declines to take such an inconsistent position absent a directive from the Tenth Circuit.

### *Conspiracy to Commit Money Laundering*

Defendants are also charged in Count 1 with conspiracy to commit money laundering in violation of 18 U.S.C. § 1957.  The elements of a § 1957 violation are that "(1) the defendant engage or attempt to engage (2) in a monetary transaction (3) in criminally derived property (4)

---

[46]*Id*. at 1261.

[47]*Id*. at 1263.

knowing that the property is derived from unlawful activity, and (5) the property is, in fact, derived from 'specified unlawful activity.'"[48] Although Count 1 does not identify the "specified unlawful activity," based on the two prior trials and the substantive money laundering counts, it is clear that the activity is the alleged wire fraud that was reversed with prejudice by the Tenth Circuit.[49] Because the substantive money laundering counts depended upon conviction for wire fraud, the Tenth Circuit also reversed those counts with prejudice.[50]

Defendants concede that because the success of the object offense is not necessary for a conspiracy conviction, a defendant need not engage in a financial transaction with the proceeds of a specified unlawful activity to be guilty of conspiracy to commit money laundering. Instead, they argue, a defendant must agree to engage in a financial transaction with the proceeds of an unlawful activity. Defendants assert that if there is no specified unlawful activity, then there can be no money laundering; the same is true for conspiracy to commit money laundering, because the defendant must know that the property in question is "criminally derived." Thus, defendants contend, the government is precluded from offering any evidence that the property was "criminally derived" based on the substantive wire fraud counts, as they were dismissed with prejudice. To do so, defendants argue, would violate the Double Jeopardy Clause, just as offering evidence to suggest the SEC reports were false would undermine the same Constitutional guarantee.

---

[48]*United States v. Massey*, 48 F.3d 1560, 1565 (10th Cir. 1995) (quoting *United States v. Lovett*, 964 F.2d 1029, 1041 (10th Cir. 1992)).

[49]*Lake*, 472 F.3d at 1260. Neither the circumvention of internal control nor the conspiracy charges can serve as "specified unlawful activity" under § 1957; those crimes are set out in §§ 1956(c)(7) and 1961 and do not include a violation of 15 U.S.C. § 78m or 18 U.S.C. § 371.

[50]*Id.*

Although labeled as a double jeopardy claim, defendants do not readily explain how retrial on this charge is a violation of the Double Jeopardy Clause and acknowledge that the essence of their motion to dismiss this charge is failure state a claim. In any event, to obtain a conviction for money laundering conspiracy, the government must prove that (1) there was an agreement between two or more persons to commit money laundering and (2) that the defendant joined the agreement knowing its purpose and with the intent to further the illegal purpose.[51] Defendants cite no authority for their argument that if there is no specified unlawful activity, there can be no conspiracy to commit money laundering. In fact, the government need not have proven an actual violation of § 1957, as the law is well settled that in a money laundering conspiracy case, the defendant need not actually commit the alleged specified unlawful activity.[52] That the conspiracy cannot actually be realized because of facts unknown to the conspirators is irrelevant.[53] Defendants' motion to dismiss this charge is denied.

**B.      Conformity of Count 1**

In the event the Court permits the government to pursue any portion of the conspiracy charge, defendants argue it must dismiss a number of general allegations in Count 1 that assert abandoned or lawful objects of the conspiracy. Defendants also argue that the Double Jeopardy Clause requires dismissal of those alleged overt acts that predate the start of the alleged conspiracy that purportedly furthered a "scheme to commit" the now dismissed wire fraud charges, as there is no longer a scheme. The Court questions whether any such rulings on the

---

[51]*United States v. Fuchs*, 467 F.3d 889, 906-07 (5th Cir. 2006) (citations omitted).

[52]*United States v. Martinelli*, 454 F.3d 1300, 1312 (11th Cir. 2006) (collecting cases).

[53]*Untied States v. Wallace*, 85 F.3d 1063, 1068 (10th Cir. 1996).

scope of the conspiracy charge implicate defendants' "right not to be tried" so as to permit a collateral order appeal under *Abney v. United States*.[54]  In fact, many of defendants' claims are evidentiary in nature and are more properly dealt with in motions in limine or after the evidence is presented at trial.  The Court also notes that defendants have moved to strike such allegations and overt acts based on Fed. R. Crim. P. 7(d).[55]  Nevertheless, because several of the issues raised by defendants at least implicate the Double Jeopardy Clause, the Court makes the following analysis and rulings.

## 1.      Objects of the Conspiracy

Defendants argue that the "objects" of the conspiracy are limited to wire fraud, money laundering and circumvention of internal controls.  Instruction 17 stated that the jury's verdict must be unanimous with respect to those three unlawful objectives of the conspiracy.  Paragraph 22 of the Indictment, however, spells out the objects of the conspiracy and scheme to defraud to also include obtaining compensation under false pretenses, perverting corporate programs for personal profit, seeking systematically to loot Westar of money and assets, etc.  The Tenth Circuit found that the required wirings, which were "the government's sole challenge to the reports of defendants' compensation," were not false, and thus were fatal to the scheme charged. As a result, defendants argue, there is no longer a scheme, and the objects listed must be objects of the conspiracy and not of any scheme to defraud.  Defendants also argue that because the object of a conspiracy must be unlawful, the other lawful objects set out in the Indictment must be dismissed.

---

[54]431 U.S. 651, 662 (1977).

[55](Doc 918.)

Defendants' request to "conform" the objects set forth in the Indictment is based on the inaccurate premise that "the object of a conspiracy must be unlawful," and that certain conduct alleged as objects in Paragraph 22 "is not unlawful as it is required to be." The law is well settled, however, that if the object of a conspiracy is lawful, the conspiracy is still criminal if unlawful means are intended or reasonably foreseeable.[56] In fact, as previously discussed, the government does not have to prove that defendants specifically intended to use wire communications, but only that "an agreement to defraud plus knowledge that the use of the mails [or wires] was reasonably foreseeable."[57]

By way of example, the government posits that

> even if "perverting corporate programs" (Indictment ¶ 22B) is not specifically proscribed in Title 18 of the United States Code, it still can be the object of a conspiracy to commit wire fraud. Specifically, a conspiracy to commit wire fraud can exist if the Defendants sought to pervert corporate programs with the intended or foreseeable use of false or misleading wires. That makes sense since, in a conspiracy to commit wire fraud, the wire fraud may not be an end in itself, but is being done to achieve the end of obtaining money or other property. On the other hand, the wire fraud in a conspiracy to commit wire fraud may be an end in itself if the purpose of the wire is to cover up illegal conduct.

Further, defendants mistakenly conclude the Indictment is limited to an agreement to electronically file with the SEC documents that falsely reported their compensation with respect to their personal use of corporate aircraft. Certainly, the substantive wire fraud and

---

[56]*United States v. Kendall*, 766 F.2d 1426, 1431 (10th Cir. 1985) ("A conspiracy is a combination of two or more persons acting in concert to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.").

[57]*United States v. Richards*, 204 F.3d 177, 208 (5th Cir. 2000) (quotation omitted), *overruled on other grounds by United States v. Cotton*, 535 U.S. 625, 631 (2002); *United States v. Reed*, 721 F.2d 1059, 1060-61 (6th Cir. 1983) (citing *United States v. Feola*, 420 U.S. 671 (1975)).

circumvention counts depended on allegations involving the lack of proper internal or external disclosure of flights. But the conspiracy count alleges years' worth of corporate transactions as part of a conspiracy to "loot" Westar. As this Court observed in its lengthy order denying defendants' Rule 29 motions,[58] for purposes of the conspiracy charge, there is abundant evidence of wire fraud communications in the various transactions specified in the overt acts, separate and apart from the proxy filings. This finding was not challenged on appeal, nor did the Tenth Circuit reverse the conspiracy charge on sufficiency of the evidence grounds. Thus, the Indictment is not limited in the manner defendants suggest.

## 2. Overt Acts

The Indictment lists twenty overt acts that defendants allegedly committed "[i]n furtherance and execution of the objects of said conspiracy and scheme to defraud." Defendants argue that without a scheme to execute, the overt acts listed in Paragraphs 23A - T of the Indictment are left to be only for the purpose of "furthering the conspiracy," and each overt act must be analyzed with an eye toward whether it is in furtherance of one or more of the three objects, wire fraud, circumvention and money laundering. Only Paragraph 24A, which alleges false reporting with respect to defendants' use of the corporate aircraft, survives this analysis because the others do not contemplate a wiring or show that a false wiring was intended.

In support of their arguments, defendants quote from this Court's June 27, 2007 order denying the government's motion to reinstate pretrial restraining orders with respect to advancement of attorney fees[59] Within the limited context of that issue, the Court expressed

---

[58](Doc. 679.)

[59](Doc. 836.)

concerns about the government's ability to seek forfeiture of certain assets that constitute or are derived from a scheme and conspiracy to commit money laundering and wire fraud. The Court stated,

> Quite simply, there is no longer a "scheme" that can serve as the underlying basis for the forfeiture count. Instead, the only remaining basis for forfeiture is the conspiracy charge. . . . This is particularly critical to the government's theory with respect to the advancement of legal fees, as it was premised on defendants' fraudulent assumption of employment with Westar. While the scheme allegedly predated defendants' respective dates of employment, it did not morph into a conspiracy until defendant Lake actually joined the Company in 1998. Thus, the Court questions whether probable cause has been established as to certain assets in light of the reversal with prejudice of the wire fraud counts.[60]

In other words, this Court denied pretrial restraint of the advanced attorneys fees, a property interest defendants acquired at the time of their respective employment, because the conspiracy, at least as charged in the Indictment, commenced in 1998, at or around the time defendant Lake commenced employment. This order denying pretrial restraint is in no way a final decision on the forfeitability of this asset. Only if the jury convicts the defendants of the predicate offenses of conspiracy to commit wire fraud or conspiracy to commit money laundering, will there be a trial on the forfeiture count. Defendants attempt to extrapolate this very limited ruling to the remaining conspiracy charge, going so far as to claim the Court has ruled there is no longer a scheme in the context of that count. Clearly, that was not the case, as Count 1 charges a conspiracy to create a scheme to defraud Westar.

The government responds that a more comprehensive review of the evidence in the

---

[60](Doc. 836 at 15.)

record would support a reasonable jury in finding that a conspiracy was formed by defendants as early as the first quarter of 1995, before Wittig officially became employed by Westar. The government cites to defendant Lake's testimony during the second trial that Wittig called him at Bear Stearns during the first quarter of 1995 and discussed diversification strategies of his future employer, Westar. Wittig then met with Lake, and the meeting commenced with a wire communication between the alleged conspirators. The government asserts that Lake even bragged that the diversification of Westar was his idea. Thus, the government argues, there is evidence of overt acts and wire communications involving defendants that predate their employment with Westar, from which a reasonable jury could find the scheme morphed into a conspiracy in the first quarter of 1995, with the phone call between defendants. Such evidence would form the basis for forfeiture of property rights obtained by defendants by virtue of assuming their employment under false pretenses.

Defendants cry foul at the government's position, arguing that the government seeks to substantively amend the Indictment to revise the beginning of the conspiracy back to 1995. This, defendants contend, constitutes an impermissible constructive amendment of the Indictment. An indictment is "constructively amended if the evidence presented at trial, together with the jury instructions, raises the possibility that the defendant was convicted of an offense other than that charged in the indictment."[61] "This doctrine is rooted in the Fifth Amendment right to be tried only for charges upon indictment by a grand jury."[62] By contrast, a variance occurs when the charging terms and elements stated in the indictment remain unaltered,

[61]*United States v. Brown*, 400 F.3d 1242, 1254 (10th Cir. 2005) (quoting *United States v. Apodaca*, 843 F.2d 421, 428 (10th Cir. 1988) (citing *Stirone v. United States*, 361 U.S. 212, 215-19 (1960)).

[62]*Id.*

but the evidence at trial proves facts other than those alleged in the indictment.[63]  The government states that where it previously relied on circumstantial evidence to establish when the conspiracy first commenced, thanks to Lake's testimony, it now has concrete evidence of an earlier conspiracy start date than alleged in the Indictment.  This scenario describes a variance rather than a constructive amendment.  Variance between the indictment and the proof is fatal and warrants overturning a criminal conviction only upon a showing of substantial prejudice.[64]  Variances such as the one in this case relating to discrepancies in the timing of the offense charged are not prejudicial and thus not fatal to the Indictment.[65]  Moreover, a limiting jury instruction may be appropriate to mitigate any possible prejudice occurring from such a nonmaterial variance.[66]

    As previously discussed, it is clear that the government need not show any wirings to prove a conspiracy to commit wire fraud—it is enough to show that the use of wires in furtherance of the scheme was contemplated by or reasonably foreseeable to the conspirators.[67]  As this Court observed in the order denying defendants' Rule 29 motions after the second trial, there is abundant evidence of wire communications in the various transactions specified in the

---

[63]*United States v. Ailsworth*, 138 F.3d 843, 849 (10th Cir. 1998) (finding variance because indictment charged participation in widespread conspiracy and evidence only established defendant participated with one other person in one-day conspiracy).

[64]*Id.*

[65]*See United States v. Johnson*, 248 F.3d 655, 665 (7th Cir. 2001) (explaining the introduction of evidence of pre-conspiratorial events does not by itself create a constructive amendment to the indictment, especially when the evidence is found to be intricately related to the crime charged).

[66]*See United States v. Caballero*, 277 F.3d 1235, 1243 (10th Cir. 2002) (finding no prejudicial variance though jury presented with different time and place of offense from indictment because jury instructions to disregard discrepancy prevented prejudicial deliberations).

[67]*United States v. Richards*, 204 F.3d 177, 208 (5th Cir. 2000) (quotation omitted), *overruled on other grounds by United States v. Cotton*, 535 U.S. 625, 631 (2002).

overt acts, separate and apart from the proxy filings with the SEC. This finding was not challenged on appeal. Evidence of other wires in connection with the overt acts included faxes, emails, other SEC filings and telephone calls. The government submits that evidence at the third trial will include additional evidence[68] of wires including, for example, the wiring of proceeds from Lake's misuse of the loan program to his bank account; the faxed signature pages for the employment agreements in September 2002; and a fax from Lake to Mike Macris at Cahill Gordon concerning Guardian. Thus, there is no basis for this Court to conform any of the overt acts specified in Paragraph 23 of the Indictment.

### 3. Timing of the Conspiracy

Defendants argue that the conspiracy charge should be conformed to eliminate all allegations prior to February 18, 1999 because of the verdict on Count 2, and prior to April 14, 1999 because of the verdict on Count 19. Count 2 is the first circumvention count and is alleged to have been committed by Wittig "on or about 2/1999" while the other circumvention counts are alleged to have occurred after "3/13/2000." Defendants argue that the simultaneous acquittal of Lake[69] and conviction of Wittig on Count 2 can only mean that the jury rejected the necessary premise that "the crime was committed after [Lake] joined the conspiracy." Thus, defendants argue, the jury's verdict established that the earliest date the conspiracy existed was February 18, 1999, the date charged in Count 3. As a result, if Count 1 is not dismissed, the jury's acquittal of Lake on Count 2 establishes that the earliest date for the conspiracy as February 18, 1999.

---

[68] The Court notes that nothing in the Tenth Circuit's order precludes the government from offering in the retrial, additional evidence, or evidence offered by the defendants in the first or second trial.

[69] The jury was duly instructed that a defendant could be convicted for the conduct of the co-defendant if the defendant either aided and abetted the co-defendant or if the defendant had *Pinkerton* liability as a co-conspirator of the co-defendant. *See* Instruction 31(Doc. 528-2 at 7.)

Likewise, Count 19 is the first in chronological order of seven counts of wire fraud, charging Wittig with an April 14, 1999 wire transmission. Because the jury acquitted Lake but convicted Wittig, defendants argue, there was no illegal agreement that existed at the time Count 19 was allegedly committed and the conspiracy did not exist as of April 14, 1999. Accordingly, any allegations in the Indictment that predate or reference acts that occurred prior to April 14, 1999 violate the Double Jeopardy Clause, and requires Paragraphs 2, 21, and 23B - D to be stricken or revised.

The Court disagrees. There is no way to determine with certainty that the jury acquitted Lake on Count 2 or Count 19 solely because he did not join the conspiracy prior to February 18 or April 14, 1999, respectively. The jury convicted both defendants of the conspiracy count, which included more than conduct relating to airplane use and D & O Questionnaires. Thus, the jury may have well found that the conspiracy with respect to non-disclosure of airplane use was not part of the conspiracy prior to February or April 1999, but other objects of the conspiracy to commit wire fraud, such as obtaining unauthorized compensation and looting, existed prior to that date. Because it is impossible to tell from the general verdicts what the basis for acquittal was on either Count, the Court declines to revise the timing of the Indictment as requested.

### C. Forfeiture Count 40

Defendants argue that even if the Court does not dismiss the Indictment in its entirety, it must nevertheless dismiss those portions of Count 40 that the jury determined were not subject to forfeiture. Defendants argue that the elimination of the wire fraud predicate confines the scope of the forfeiture because any forfeiture can be premised only on the conspiracy count, which has been correspondingly narrowed due to the Tenth Circuit's dismissal of the wire fraud

and money laundering charges. Defendants also argue that the specialized forfeiture verdicts in favor of defendants, which the government did not appeal, preclude the government from seeking again the forfeiture of a substantial amount of property identified in the Indictment.

The Court denies defendants' motions. First, the Court has denied defendants' request to conform the Indictment to dismiss any alleged overt acts that purportedly furthered a "scheme to commit" the now dismissed wire fraud charges. Thus, the Court also denies defendants' request to limit the scope of the forfeiture count to exclude any property obtained prior to the conspiracy.[70]

Second, the Court declines to give preclusive effect to the forfeiture verdicts. "[W]hen an issue of ultimate fact has once been determined by a valid and final judgment," collateral estoppel precludes the same parties from litigating that same issue in any future lawsuit."[71] Unlike the Tenth Circuit's mandate reversing the wire fraud convictions with prejudice, the mandate with respect to the forfeiture count is not a final judgment, as it was reversed and remanded for retrial.[72] The Tenth Circuit has recognized that a judgment has no preclusive effect, for res judicata and collateral estoppel purposes, if it has been vacated, reversed or set aside.[73] The fact that the government did not appeal the forfeiture verdicts does not result in an adjudication on the merits, when the verdict is reversed and remanded for retrial. Simply put, the forfeiture verdicts are not a "valid and final" judgment.

---

[70]This denial is without prejudice to renew any such motion at the close of the government's evidence at retrial.

[71]*Ashe v. Swenson*, 397 U.S. 436, 443 (1970).

[72]*United States v. Lake*, 427 F.3d 1247, 1267(10th Cir. 2007).

[73]*Romano v. Gibson*, 239 F.3d 1156, 1179 (10th Cir. 2001) (citing *United States v. Lacey*, 982 F.2d 410, 412 (10th Cir. 1992); *United States v. Sackett*, 114 F.3d 1050, 1052 (10th Cir. 1997)).

In so ruling, the Court notes that on retrial, the predicate offenses are limited to conspiracy to commit wire fraud and conspiracy to commit money laundering, as the dismissed substantive wire fraud charges can no longer serve as a basis for forfeiture.[74]

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion to Dismiss (Doc. 888), Supplemental Motion to Dismiss (Doc. 913), Joint Supplemental Motion to Dismiss Count 40 (Doc. 926) and defendant Wittig's Motion to Strike or Otherwise Conform Count 1 (Doc. 915) are DENIED.

IT IS SO ORDERED.

Dated this 1st day of August 2008.

   S/ Julie A. Robinson
Julie A. Robinson
United States District Judge

---

[74]*See* Special Verdict Forms (Docs. 543, 535.)